Karen **BRUDNEY**

v.

Peter D. **EMATRUDO,** Individually and in his official capacity as a police officer with the Police Department of the City of New Haven.

Civ. No. 15390.

United States District Court,
D. Connecticut.

June 21, 1976.

Michael Avery, Roraback, Williams & Avery, New Haven, Conn., for plaintiff.

Anthony J. Lasala, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

The plaintiff, Karen Brudney, a former student at Yale University, commenced this action against Peter Ematrudo, a member of the New Haven Police Department, to recover damages for a violation of her constitutional rights under 42 U.S.C. § 1983 and for assault and battery under a pendent claim based upon the law of the State of Connecticut. A bench trial was held during which eight witnesses were called by the parties in February, 1976, and comprehensive briefs have now been filed.

The evidence at trial was highly contradictory and disparate. It appears, however, that on May 11, 1972, the plaintiff was attending a demonstration conducted at the Yale-in-China building, 434 Temple Street in New Haven, to protest the presence of a Marine Corps recruiter on the Yale campus. The demonstration was, in a larger sense, directed against the continuing United States involvement in Southeast Asia. The protestors, predominantly Yale students, began to assemble at the Temple Street address at approximately 9:00 A.M. By 11:00 A.M., the crowd had grown to over 100, and about 10 to 15 police officers in plain clothes, including the defendant, moved in and formed a line in front of the building to insure access to anyone who might wish to talk to the recruiter. When several Yale students attempted to gain

entrance to the building to see the representative from the Marine Corps, the demonstrators sought to block the visit, tempers flared, and physical confrontations between the protestors and the police ensued.

The plaintiff contends that she was passively standing by at the fringe of the crowd when the defendant, without warning and without provocation on her part, walked over to her and wilfully and viciously struck her on the head with a blackjack, causing her injuries which required immediate medical treatment at the Yale infirmary. Her witnesses generally confirmed her version of the incident. Robert Yuhnke, at the time a Yale law student and presently an Assistant Attorney General for the Commonwealth of Pennsylvania, testified that only a "peaceful" demonstration was occurring when the defendant reached into the crowd and struck out with his blackjack three times. He saw a woman's head being hit and then observed Ms. Brudney being led out of the crowd by her friends. Since he was a law student who had had some experience with police misconduct in other cities, Yuhnke felt it was important to record the names of other witnesses and submit them to the plaintiff along with the recommendation that she consult with an attorney.

Mr. Joshua Cohen, a friend of Ms. Brudney's and a fellow student at Yale, stated that although the demonstrators had taken no "affirmative action" against the police, there was some "pushing" on the part of the police just prior to the plaintiff being struck by the defendant. He later confronted the defendant with Ms. Brudney seeking an explanation for the assault. The defendant denied striking the plaintiff.

Robert Martin, another former Yale student who is now an accountant, affirmed that the plaintiff was hit "without provocation" at a time when there might have been some type of altercation taking place, but not in the area where the plaintiff was standing.

The defendant and his three witnesses presented an entirely different version of the situation. Officer Grasso testified that a general disturbance broke out when two Yale students attempted to gain entrance to the building. Detective Giannotti was being assaulted when police officers came to his aid, but Grasso had no recollection that the plaintiff received injuries during the fracas. Detective Giannotti asserted that demonstrators were fighting with the police when he and officer Caccioli were knocked to the ground and kicked by the crowd. At this point, the defendant lunged into the group to aid the fallen policemen and Giannotti saw the defendant's hand "go by." However, he did not see the plaintiff being struck. Detective Caccioli stated that during the course of a violent confrontation between police and students, he, officer Grasso, and the defendant rushed to detective Giannotti's side to rescue him from the crowd. However, he did not observe the incident between the plaintiff and defendant. Finally, the defendant testified that he used his blackjack to subdue a male demonstrator identified as "Cruz" who was attacking Giannotti. He denied he struck the plaintiff and had no explanation to account for her claim.

Under these circumstances, it becomes a most difficult task to determine exactly what occurred on the date in question. All the witnesses have excellent reputations and their demeanor on the stand was impressive. Yet, the Court must recognize that during the course of any melee, particularly one that breaks out in the tense atmosphere of an anti-war protest, a great deal of confusion results. Some witnesses are in a better position to hear and see what actually occurred; others are overly-eager to recite their stories in a light best suited to advance the cause of the party calling them to testify; and, still others may have strong philosophical beliefs which subconsciously impede accurate observations and hamper accurate reporting. In addition, the passage of time may adversely affect the witnesses' recollection and cause flawed testimony.

After a careful review of the evidence, the Court accepts neither of the parties' complete version of the facts and finds as

follows. On May 11, 1972, at approximately 11:00 A.M., a peaceful anti-war demonstration held in front of the Yale-in-China building in New Haven turned into a serious physical encounter between students and police. Scuffles and fights occurred. The defendant, observing that detective Giannotti had been knocked to the ground and was under attack by several students, left his post on the steps of the building and rushed to assist his fellow officer. After issuing a verbal warning that went unheeded, he lashed out with his blackjack in order to subdue a male demonstrator (probably Cruz) who was assaulting Giannotti. As the blackjack descended and hit the head of the demonstrator, it accidentally glanced the head of the plaintiff, causing a mild injury. Because the blackjack struck its intended target, the defendant did not realize the weapon also touched the plaintiff's body as it came down in and among a pushing, shoving, fighting group of persons. The plaintiff, on the other hand, feeling an unexpected, sharp and sudden force against her head, reasonably assumed she was the object of the defendant's blackjack.

Thus, the Court finds, that contrary to the defendant's assertion, his blackjack did come into contact with the plaintiff's head during the fracas involving detective Giannotti and several male demonstrators. There is not a scintilla of credible evidence to support an inference that the action of any other person caused the injury to the plaintiff. But, contrary to the plaintiff's allegation, the Court concludes she was not the victim of an unprovoked act of police brutality. If the defendant had approached the plaintiff on a one-to-one basis and, with a forceful overhand swing, come down on her head with a blackjack, as the plaintiff and her witnesses claim, obviously a severe breakage of the skin with probable unconsciousness would have resulted. However, the medical records disclose that the plaintiff denied loss of consciousness or memory, that she was alert and, that, except for a hematoma, the physical examination was negative. The discharge diagnosis states "forehead contusion." These injuries are consistent with a glancing blow *off* the

head rather than a direct, forceful stroke *to* the head.

## THE FEDERAL CLAIM

It is now settled law that the Civil Rights Act, 42 U.S.C. § 1983, neither permits police brutality nor allows police conduct which "shocks the conscience." *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *Jones v. Marshall,* 528 F.2d 132 (2 Cir. 1975); *Johnson v. Glick,* 481 F.2d 1028 (2 Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973); *Arroyo v. Walsh,* 317 F.Supp. 869 (D.Conn.1970). In determining whether a police officer in a physical confrontation with a citizen has crossed the constitutional line, a court must weigh such factors as "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Johnson v. Glick,* supra at 1033.

Applying these standards to the instant case, it is the Court's opinion that the defendant's conduct did not offend the constitutional rights of the plaintiff. The defendant resorted to the use of force to aid another policeman under assault only after his verbal warning was ignored. His use of a blackjack was necessary, reasonable, limited and relatively controlled under the circumstances. Due to the crush of the crowd and the plaintiff's close proximity to the demonstrators who were attacking the officer, the blackjack accidentally grazed the plaintiff's head. Immediately after the release of the fallen officer by the protestors, the defendant ceased using his blackjack and retreated to call for assistance from uniformed police. It seems evident, therefore, that the defendant's application of force was restricted to a good faith effort to extricate a fellow police officer from great potential harm and to restore order

and discipline within the crowd. Finally, the minor nature of the injury inflicted negates any suggestion by the plaintiff and her witnesses that the defendant acted maliciously or sadistically.

## THE STATE CLAIM

■ Under Connecticut tort law, which imposes a greater duty of care on a police officer in the use of force than is required by § 1983, see *Johnson v. Glick,* supra at 1033, a police officer is liable if force is applied as the result of intentional, wanton or negligent conduct. *Moriarty v. Lippe,* 162 Conn. 371, 389, 294 A.2d 326 (1972). Even if a policeman unintentionally and accidentally injures a plaintiff, he would be liable for damages if the force were exerted without the exercise by him of due care. *Lentine v. McAvoy,* 105 Conn. 528, 530, 136 A. 76 (1927); *Ashley v. Ritter Finance Co.,* 29 Conn.Sup. 503, 505, 294 A.2d 83 (1972).

■ Based on the findings of fact as hereinbefore set forth, the Court is impelled to the conclusion that the defendant did not commit an actionable assault and battery against the plaintiff. It is evident that the defendant acted within reasonable limits in determining the type and amount of force required in order to rescue officer Giannotti during the altercation with the demonstrators. Cf. *Moore v. Bishop,* 338 F.Supp. 513 (E.D.Tenn.1972). It is unfortunate that the plaintiff received an injury through no fault on her part, yet the record fails to convince the Court that she proved her claims by a preponderance of the evidence.

Accordingly, judgment may enter for the defendant.