No. 14356

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

ALFRED A. LUCIANO,

> Plaintiff and Appellant,

-vs-

MICHAEL REN and THE
STATE OF MONTANA,

> Defendants and Respondents.

---

Appeal from: District Court of the Nineteenth Judicial
District,
Honorable Robert Sykes, Judge presiding.

Counsel of Record:

For Appellant:

Moses, Tolliver and Wright, Billings, Montana
K. D. Tolliver argued, Billings, Montana

For Respondents:

Garlington, Lohn and Robinson, Missoula, Montana
Gary Graham argued and Gary Chumrau argued,
Missoula, Montana

---

Submitted: December 19, 1978

Decided: JAN 24 1979

Filed: JAN 24 1979

_Thomas J. Kearney_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Plaintiff, Alfred A. Luciano, III, instituted a civil action against Michael Ren and the State of Montana, in Lincoln County District Court alleging wrongful assault and battery.

On September 26, 1974, at approximately 11:00 p.m., Michael Ren, a highway patrolman for the State of Montana, received a request from the U.S. Forest Service and the Lincoln County Sheriff's Department to assist in an arson investigation in the Glen Lake area near Eureka. A series of fires had been started in the vicinity, the most recent occurring at 3:00 a.m., September 26, approximately twenty hours before Ren came upon the scene.

With fellow investigators, Ren walked up a dirt road . that ended at the top of a hill. The road had been swept by plows earlier in the day, but tire tracks from a four-wheel drive vehicle were discovered. The tracks were similar to plaster casts of tracks that had been obtained three days earlier. The tracks went to the top of the hill, but there was no sign the vehicle had exited via the dirt road. It was decided that the vehicle probably entered the forested area at the end of the road and disappeared.

Ren had started walking down the hill, using his flashlight to illuminate the way, when he noticed a pickup truck coming up the road. He assumed it belonged to the Forest Service. Ren was certain that it was not the vehicle that had been on the road previously. Shortly thereafter, Ren noticed Alfred Luciano, the plaintiff, walking towards him. Ren recognized Luciano because earlier that day Ren had issued a speeding ticket to him. Ren did not view Luciano as a suspect in the arson investigation. The two men walked together. Luciano put his arm on Ren's shoulder and stated that he knew who the arsonist was and would tell Ren if he would tear up the speeding ticket. Ren

-2-

promptly informed Luciano that no deal would be made on the ticket.

As they approached the pickup, Ren told Luciano that if he had information regarding the fires, he must give it to the rangers and deputy sheriff. The men parted and Luciano walked down the right side of the pickup. Ren, thinking Luciano was going to leave, said, "You're not going anywhere." and grabbed his arm. Luciano pulled away, swinging his right arm at Ren, and Ren hit Luciano on the head with his flashlight. The flashlight was sixteen inches long and weighed approximately five pounds. Luciano testified at trial, that he was not attempting to strike Ren, but that he had been pulled off balance by Ren and was spinning around. Ren admitted that he was not sure Luciano was striking a blow at him and that he was not acting in self-defense; rather, he was reacting to Luciano's swinging arm.

Ren placed Luciano in a hammerlock hold and forced him against the hood of the pickup. Luciano wrestled loose, swung around, and Ren hit him on the head again with the flashlight. About this time, a sheriff's deputy, Eugene Mustard, approached and the two officers handcuffed Luciano and put him in the patrol car. Luciano managed to get out of the car, and Ren hit him in the solar plexus with the butt of the flashlight and pushed him back into the car, where he remained until arriving at the Eureka jail. Luciano was charged with and convicted of disorderly conduct.

On October 22, 1975, Luciano instituted this civil action seeking compensation from Michael Ren and the State of Montana for damages caused by wrongful assault and battery. The case was tried before a jury in District Court, Lincoln County, Montana. At the close of evidence, Luciano's counsel moved for a directed verdict, contending that Ren had no privilege, as a matter of law, to strike

-3-

Luciano. The District Court denied the motion finding that the officer's privilege, under these circumstances, was a question of fact for the jury to decide. The case went to the jury and a unanimous verdict was returned in defendants' favor.

On appeal, Luciano raises two issues:

1. Was Ren's use of force privileged under Montana's "stop and frisk" statute, section 95-719, R.C.M. 1947?

2. Did the District Court improperly refuse to admit evidence of Ren's prior assaults and altercations?

A peace officer is given a privilege, by statute, to use all necessary and reasonable force in making an arrest. Section 95-602, R.C.M. 1947. The privilege extends to the use of force necessary to prevent the escape of the arrested person. Section 94-3-106, R.C.M. 1947. However, the right to make an arrest is vested in the officer by law and an arrest without lawful authority violates the right of the citizen to the "enjoyment of his personal liberty free from aggression by anyone." State v. Bradshaw (1916), 53 Mont. 96, 161 P. 710.

In 1973, section 95-719, R.C.M. 1947, was enacted. It provides:

> "Stop and frisk. (1) A peace officer may stop any person he observes in circumstances that give him reasonable cause to suspect that the person has committed, is committing, or is about to commit an offense involving the use or attempted use of force against a person or theft, damage, or destruction of property if the stop is reasonably necessary to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person.

> "(2) A peace officer may stop any person he finds near the scene of an offense that he has reasonable cause to suspect has just been committed if:

> "(a) he has reasonable cause to suspect that the person has knowledge of material aid to the investigation of the offense; or

-4-

"(b) the stop is reasonably necessary to obtain or verify the person's identity or an account of the offense.

"(3) A peace officer may stop any person in connection with an offense that he has probable cause to believe has been committed if:

"(a) the offense is a felony involving the use or the attempted use of force against a person or theft, damage, or destruction of property;

"(b) he has reasonable cause to suspect the person committed the felony; and

"(c) (i) the stop is reasonably necessary to obtain or verify the person's identity to determine whether to arrest the person for the felony; or

"(ii) the peace officer has reasonable cause to suspect that the person was present at the scene of the offense and the stop is reasonably necessary to obtain or verify the person's identity.

"(4) A peace officer who has lawfully stopped a person under this section may:

"(a) frisk the person and take other reasonably necessary steps for protection if he has reasonable cause to suspect that the person is armed and presently dangerous to him or another person present; and

"(b) take possession of any object that he discovers during the course of the frisk if he has probable cause to believe the object is a deadly weapon.

"(5) A peace officer who has lawfully stopped a person under this section may demand of the person his name and his present or last address.

"(6) A peace officer who has lawfully stopped a person under this section shall inform the person, as promptly as possible under the circumstances and in any case before questioning the person, that he is a peace officer, that the stop is not an arrest but rather a temporary detention for an investigation, and that upon completion of the investigation the person will be released unless he is arrested.

"(7) After the authorized purpose of the stop has been accomplished or 30 minutes have elapsed, whichever occurs first, the peace officer shall allow the person to go unless he has arrested the person."

Section 95-719 does not specifically grant peace officers a statutory privilege to use necessary and reasonable force as the arrest statutes do. However, as a general proposition of law, peace officers are expected to use such force as is necessary to perform their regular duties. Miller, Criminal Law §64(b), p. 191.

> "One who is interfered with in the discharge
> of a duty, . . . may, when force is required, use
> such force as is reasonably necessary to enable
> him to carry out his lawful purpose . . .
> Hence a public officer acting under authority
> of law and without malice is not liable for
> assault and battery provided he uses no more
> force than is reasonably necessary under the
> circumstance to properly perform his official
> duties." 6A C.J.S. Assault and Battery §26.

Whether the force used in a particular case is reasonable is a question of fact for the jury to decide. As stated in Mead v. O'Connor (1959), 66 N.M. 170, 344 P.2d 478:

> "Officers, within reasonable limits, are
> the judges of the force necessary to enable
> them to make arrests or to preserve the
> peace. When acting in good faith, the
> courts will afford them the utmost protection,
> and they will recognize the fact that
> emergencies arise when the officer cannot
> be expected to exercise that cool and
> deliberate judgment which courts and juries
> exercise afterwards upon investigations
> in court. However, it devolves upon the
> jury, under the evidence in the case and
> proper instructions of the court, to
> resolve these questions."

It should be noted that section 95-719 does specifically refer to the officer's right to frisk the detained person and take other reasonably necessary steps for protection if he has reasonable cause to suspect that the person is armed and presently dangerous. The United States Supreme Court discussed the necessity for this privilege in the landmark "stop and frisk" case, Terry v. Ohio (1967), 392 U.S. 1, 23, 88 S.Ct. 1868, 20 L.Ed.2d 889:

> "Certainly it would be unreasonable to
> require that police officers take unnecessary
> risks in the performance of their duties.
> American criminals have a long tradition of
> armed violence, and every year in this country
> many law enforcement officers are killed in the

line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.

"In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."

Ren and the State of Montana contend the use of force was privileged in this case because Ren was attempting to stop and frisk Luciano as allowed by section 95-719(2)(a). Section 95-719(2)(a), allows a peace officer to stop any person he finds near the scene of an offense that he has reasonable cause to suspect has just been committed, if he has reasonable cause to suspect that the person has knowledge of material aid to the investigation of the offense. Luciano told Ren he knew who started the fires and Luciano was at the scene of the fires, but the crime had not just been committed. It had been committed approximately twenty hours earlier.

We must assume the Legislature had a legitimate reason for including the above mentioned requirement in the statute. State ex rel. Irvin, Inc. v. Anderson (1974), 164 Mont. 513, 525 P.2d 564. We cannot assume the Legislature intended to allow peace officers to stop and frisk any person they believe has useful information that is at the scene of an offense nearly a full day after the offense was committed. A stop and frisk "is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly". Terry v. Ohio, 392 U.S. at 17. "No right is held more sacred, or is more carefully guarded, by common law, than

-7-

the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." Union Pac. R. Co. v. Botsford (1891), 141 U.S. 250, 251, 11 S.Ct. 1000, 35 L.E. 734.

". . . [I]t is not the province of the sheriff, constable, or other officer to exert more force upon a citizen than is necessary for the carrying out of his duties, and discharging the functions of his office." Anderson, A Treatise on the Law of Sheriffs, Coroners, and Constables (1941), §294, p. 294-295. "A public officer has no right because he is such to use violence toward a citizen, even when in the discharge of his duty, except when the character of the duty requires it, and even then he must go no further than the circumstances demand." Rand v. Butte Electric Ry. Co. et al. (1910), 40 Mont. 398, 407, 107 P. 87.

We find that Michael Ren was not performing a duty of his office when he used force to stop Alfred Luciano on the night of September 26, 1974. Therefore the use of force was unprivileged and counsel's motion for a directed verdict should have been granted. Having so decided, we need not consider plaintiff's second issue.

Reversed and remanded for a determination of plaintiff's damages.

_____
                Justice

We Concur:

_____
      Chief Justice

_____

_____

_____
            Justices

-8-