710 P.2d 566

**Frank M. SPRAGUE,
Plaintiff-Appellant,**

v.

**CITY OF BURLEY In the State of Idaho,
Richard Thompson, Mike Schiers and
Les Steube, Defendants-Respondents.**

No. 15604.

Supreme Court of Idaho.

Nov. 19, 1985.

Gara Louise Newman, Rupert, for plaintiff-appellant.

William Parsons, Burley, for defendant-respondent City of Burley.

Richard C. Boardman, Boise, for defendants-respondents Thompson, Schiers and Steube.

HUNTLEY, Justice.

## I. INTRODUCTION

This case presents the question of whether the district court erred when it granted final summary judgment for the City of Burley and three of its police officers in a civil suit for false arrest, false imprisonment, assault and battery, and civil rights violations.

Frank Sprague brought this action against the City of Burley and three of its police officers after being stopped and arrested by the officers for driving under the influence of intoxicating beverages. Sprague alleged that the officers falsely arrested and physically assaulted and battered him in order to extricate him from his vehicle. He further claimed they delayed in providing him with requested medical treatment all in violation of his civil rights. As a result of the police conduct he suffered abrasions, contusions, a fractured hand, nerve damage and other serious injuries. Sprague also included a state law claim against the officers, alleging that the officers willfully and maliciously assaulted and battered him and wrongfully arrested him. He further alleged that the City of Burley failed to adequately train its officers and to instruct them as to the rights of the citizens and that this constituted a "policy" on the part of the City which deprived him of certain constitutional rights in violation of 42 U.S.C. § 1983 (1982). The City of Burley and the officers moved for summary judgment, which motion was granted as to all claims except for the claim regarding the denial of medical assistance. We conclude that the district court properly entered the order of summary judgment as to the City of Burley as to the § 1983 claim and the claim under state law; however, we also decide that as to the § 1983 claim against the individual officers, there remain questions of fact which should be submitted to the jury and, hence, the partial summary judgment order as to the officers was improper. We further hold that the district court erred in determining that Sprague had failed to state a claim against the officers under state law and reverse the order of partial summary judgment in that regard as well.

## II. STATEMENT OF THE FACTS

On August 5, 1982, at approximately 1:30 a.m., Burley police officers Richard Thompson and Mike Schiers, while on patrol in the City of Burley, stopped a vehicle driven by Frank M. Sprague. In their affidavits in support of the motion for summary judgment Officers Thompson and Schiers stated that they stopped Sprague because he was driving erratically. In his complaint, Sprague alleged that he was driving lawfully prior to the time of the stop, but the complaint was not verified and Sprague's affidavit in opposition to the motion for summary judgment did not rebut the officers' assertion that he had been driving erratically. After the stop, the officers requested Sprague to produce his driver's license and vehicle registration, and Sprague complied with that request. The officers then asked Sprague to exit his vehicle in order to take field dexterity tests. In his affidavit, Sprague asserted that he asked the officers to explain the purpose of the tests and received no response, but was instead again instructed to exit his vehicle. According to affidavits of both officers, when Sprague refused to exit the vehicle they repeatedly attempted to persuade him to exit prior to resorting to the use of physical force. Sprague, on the other hand, insists that upon his first refusal to exit his vehicle, Officer Thompson immediately began attempting to pull him from the vehicle. Officer Thompson asserted that he advised Sprague that Sprague was under arrest before Thompson used any physical force to extricate

him from his vehicle. Sprague contends that at no time did any officer inform him that he was under arrest. Sprague claims that at no point during this incident did he attempt to strike or harm the officers; however, he does not refute the officers' assertion that he resisted their efforts to remove him from the vehicle by wedging himself in the car, by placing his feet against the floor board and his hands on the wheel and by bracing his body against the seat. The officers called a third officer, Officer Les Steube, to assist in removing Sprague from his vehicle. As a result of what Sprague alleges was the excessive use of force by the officers, Sprague sustained numerous physical injuries. He was placed in a patrol car and taken to the Burley police station, where he was charged with driving under the influence of alcohol. Sprague maintains that upon arriving at the police station he requested medical assistance but was informed by the attending officers that such services were not available. In their affidavits, Officer Schiers and Steube stated that at no time did Sprague complain of any injury or request medical care or treatment and Schiers noticed no visible injury to Sprague.

### III. SPRAGUE'S § 1983 CLAIM AGAINST THE CITY

The district court set forth two reasons in support of its conclusion that Sprague had failed to set out a cause of action under 42 U.S.C. § 1983 (1982) against the City. First, it held that Sprague's claim against the City was grounded on the theory of *respondeat superior*. Also, it held that a municipality could not be held liable for the actions of its police officers pursuant to 42 U.S.C. § 1983 (1982) where the complaint alleged but a single incident of misconduct. We affirm the district court's ruling because it reached the correct result despite the fact we do not adopt the reasons advanced in support of its conclusion.

The statute, 42 U.S.C. § 1983 (1982) provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Sprague alleged:

This claim arises under the Constitution of the United States, particularly the 4th, 5th, 6th and 14th Amendments to the Constitution of the United States and under Federal law, particularly, Title 42 of the U.S. Code, Section 1983, and under the Constitution and statutes of the State of Idaho, particularly Article I, Section 13 and Section 17 of the Constitution of the State of Idaho.

Sprague's allegations which implicate the City read:

That at all times material to this Complaint, the City of Burley knew, or should have known, that the defendants, Richard Thompson, Mike Shears [sic] and Les Stube [sic] were under the color of their official capacity and of the laws of the state of Idaho and the City of Burley acting in such a manner to deprive the citizens of the City of Burley of their constitutional rights, and the City of Burley negligently and carelessly failed and refused to give said defendant employees, Richard Thompson, Mike Shears [sic] and Les Stube [sic] proper instructions under the law as to the rights of the citizens of the City of Burley and negligently and carelessly continued to employ said defendant employees, Richard Thompson, Mike Shears [sic] and Les Stube, [sic] to enforce the laws of the state of Idaho and city of Burley knowing that said defendant employees were not sufficiently trained or schooled to perform the functions of a police officer in the city of Burley, state of Idaho.

We affirm the district court's ruling granting partial summary judgment to the City because "a party defending a motion for summary judgment may not rest on its

pleadings, but must offer affidavits or other evidentiary materials which demonstrate that an issue of fact remains." *Theriault v. A.H. Robins Co.*, 108 Idaho 303, 698 P.2d 365, 368 (1985); *First Piedmont Bank and Trust Co. v. Doyle*, 97 Idaho 700, 703, 551 P.2d 1336, 1339 (1976). I.R.C.P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The City submitted an affidavit by Burley Police Chief W. Leman Messley in support of the motion for summary judgment, reading in part:

1. Your affiant is presently employed by the City of Burley as Chief of Police for the Burley Police Department and has been employed as such at all times material to the Complaint in the instant Case No. 13665 6 83.

2. As the Chief of Police for the City of Burley your affiant is responsible for the implementation, execution and review of all policies and procedures promulgated and adopted by the Burley Police Department.

3. The Burley Police Department has adopted policies and procedures in regard to the use of force by its officers in the fulfillment of their employment duties and responsibilities.

4. Officers of the Burley Police Force are authorized by the Department policies and procedures to use physical force in limited circumstances. Officers are instructed to avoid the use of physical force, whenever possible, through the use of advice, persuasion and warning in order to obtain the necessary cooperation in making an arrest and/or completing any lawful duty. A law enforcement officer is required, on occasion, to effect or maintain an arrest or to complete any lawful duty. Officers are trained to use only the minimum degree of physical force necessary to accomplish the task.

Sprague's affidavit in opposition to the motion for summary judgment read in part:

1. Your affiant is the plaintiff in the above-entitled matter and makes this affidavit in opposition to defendants' motion for summary judgment.

2. On August 5, 1982, at approximately 1:30 a.m. your affiant was traveling northbound on Overland Avenue in a 1971 Ford pickup truck. Upon approaching the entrance to the Burley Inn in Burley, Idaho, your affiant noticed a Burley city patrol car following behind with its lights on. Your affiant turned into the Burley Inn and pulled over in the driveway at that location.

3. Your affiant was then approached by Officer Richard Thompson who instructed your affiant to hand him a driver's license and vehicle registration. Your affiant complied with these instructions and at that time was instructed by Richard Thompson to get out of the vehicle and take some dexterity tests.

4. Your affiant inquired of Officer Thompson as to the nature of the requested dexterity tests and Officer Thompson refused to describe them and insisted that your affiant exit his vehicle.

5. Upon your affiant's refusal to exit the vehicle, Officer Thompson opened the driver's door on the 1971 Ford pickup and attempted to pull your affiant from his vehicle.

6. Thereafter, Officer Mike Schiers approached your affiant's vehicle and both Officer Schiers and Officer Thompson began striking your affiant's left forearm with their night sticks and attempting to pull your affiant from his vehicle.

7. At no time during this period did Officer Schiers or Officer Thompson state to your affiant that they were placing your affiant under arrest.

8. Thereafter, Officer Schiers returned to the patrol car and radioed for help,

during which time Officer Thompson continued to strike and pull at your affiant.

9. Shortly thereafter, Officer Les Steube arrived at the scene and approached your affiant's vehicle. Officer Steube inquired of your affiant as to why I would not exit my vehicle and your affiant informed Officer Steube that the other officers had refused to explain the dexterity tests requested and, thereafter, Officer Steube made a karate chop on the left arm of your affiant and then attempted to yank your affiant out of the vehicle.

10. Officer Steube, being unsuccessful in extricating me from the vehicle, backed off and discussed the matter with the other two officers on the scene and all three returned to your affiant's vehicle and began hitting, wrestling, pulling and striking your affiant in an attempt to extricate me from my vehicle.

11. At no time during this altercation did Officer Steube inform your affiant that he was being placed under arrest or was considered as being under arrest.

12. Thereafter, your affiant was wrestled from his vehicle and taken to the Burley Police Station.

13. During the contact between plaintiff and defendant your affiant made no attempt to strike or harm the officers involved.

14. That upon arriving at the police station your affiant requested that medical attention be provided but your affiant was told by the attending officers that such services were not available.

15. While at the Burley Police Station, your affiant was given one of the Miranda Rights but, again, no officer instructed your affiant that he was under arrest or took the time to explain procedure to him. Your affiant was allowed to make one phone call before being placed in the jail cell at the Burley jail.

16. The following morning, August 6, 1982, your affiant inquired of the morning jailer and also of Kelly Hutchinson if he would be allowed to receive medical attention, indicating that he believed his arm was broken but was likewise instructed that no medical attention would be provided to your affiant.

17. Your affiant called his friend Frank Glover from the Burley Police Station and requested that Mr. Glover come to the police station and post bail for his release. The next morning, August 6, 1982, your affiant learned that Frank Glover had attempted to post bond for your affiant on the night of August 5, but due to the fact that your affiant had been incorrectly booked under the name of Frankie Marrett, Mr. Glover was informed that your affiant was not being held at the Burley jail.

■ Clearly, Sprague's affidavit did not refute or even address Messley's assertions regarding the adequacy of the officers' training; nor did Sprague present evidence from which a link between the alleged unconstitutional incident and a city policy could be reasonably inferred. Because Sprague's affidavit failed in any way to respond to or controvert Messley's statements with regard to the City's officer training policy, the district court properly entered an order of summary judgment as to the City.

The district court accurately observed that under the holding of *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), a cause of action cannot be predicated against a municipality under 42 U.S.C. § 1983 upon the theory of *respondeat superior*, but improperly concluded that Sprague's allegation against the City of Burley was grounded on that theory. In *Monell*, the Court noted that 42 U.S.C. § 1983 only imposes liability for deprivations caused by a particular defendant, and that it was difficult to find such causation where liability is imposed merely because of an employment relationship. However, Sprague did not premise his § 1983 claim against the City on the basis of *respondeat superior*, as urged by the City and as concluded by the district court. Rather, he claimed that the City's liability stemmed from the fact that it knew or should have

known that its police officers were acting in a manner so as to deprive citizens of their constitutional rights; that the City negligently and carelessly failed and refused to give the officers proper instructions as to how to conduct themselves under the laws; and further failed to sufficiently train or school the officers so that they might properly perform their functions. Hence, his claim did not rest on the mere fact that the officers were employees or agents of the City but rather was premised on the assertion that the City itself had, through its allegedly inadequate training of its officers, created the situation that proximately caused his injuries. This *may* be sufficient notice pleading to meet the requirement set out in *Monell*, that a plaintiff allege the constitutional harm was caused by a "policy statement, ordinance, regulation, or decision promulgated or adopted by" the municipality.

The district court also concluded that the City could not be held liable for the actions of its police officers pursuant to 42 U.S.C. § 1983 because the complaint alleged but a single incident of officer misconduct. Recently, in *City of Oklahoma City v. Tuttle*, —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the United States Supreme Court addressed the issue of whether a single isolated incident of the use of excessive force by a police officer establishes an official policy or practice of a municipality sufficient to render the municipality liable for damages under 42 U.S.C. § 1983. In that case, Mrs. Tuttle brought suit under 42 U.S.C. § 1983 against an officer and Oklahoma City, alleging that their actions had deprived her husband of certain constitutional rights when an officer killed her husband outside a bar in which a robbery had been reported in progress.

With respect to the liability of [Oklahoma] City, the trial judge informed the jury that the petitioner could be held liable only if a municipal "policy" had caused the deprivation, and further instructed the jury that it could "infer," from "a single, unusually excessive use of force ... that it was attributable to inadequate training or supervision amounting to 'deliberate indifference' or 'gross negligence' on the part of the officials in charge." The jury returned a verdict in favor of the officer, but against [the city], and awarded [Mrs. Tuttle] damages. Rejecting [the city's] claim that the jury instruction was improper, the Court of Appeals held that proof of a single incident of unconstitutional activity by a police officer could suffice to establish municipal liability. *Tuttle*, —— U.S. at ——, 105 S.Ct. at 2428.

The United States Supreme Court reversed the judgment, holding that the instruction was improper because it "allowed the jury to infer a ... nebulous 'policy' of 'inadequate training' on the part of the City from the single incident in question, and at the same time sanctioned the inference that the policy was the cause of the incident." *Tuttle*, —— U.S. at ——, 105 S.Ct. at 2429.

Justice Rehnquist, writing for the majority, stated:

We think this inference unwarranted; first, in its assumption that the act at issue arose from inadequate training, and second, in its further assumption concerning the state of mind of the municipal policy makers. But more importantly, the inference allows a § 1983 plaintiff to establish municipal liability without submitting proof of a single action taken by a municipal policymaker. *Tuttle*, 105 S.Ct. at 2435.

■ Although Mrs. Tuttle introduced independent evidence of inadequate training of the officers, the Supreme Court concluded that the judgment was nonetheless flawed because the instructions allowed the jury to impose liability *even if it did not believe the experts.* Justice Rehnquist explained:

Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell, unless* proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.

Otherwise, the existence of the unconstitutional policy, and its origin must be *separately* proved. *Tuttle*, 105 S.Ct. at 2436. (Emphasis added)

Hence, the Supreme Court did not conclude that a single incident of unconstitutional activity could *never result* in the imposition of municipal liability under § 1983. However, proof of a single incident, *standing alone*, cannot sustain a finding of municipal liability.

The *Tuttle* court stated:

We express no opinion on whether a policy that itself is not unconstitutional, such as the general "inadequate training" alleged here, can ever meet the "policy" requirement of *Monell*. In addition, even assuming that such a "policy" would suffice, it is open to question whether a policymaker's "gross negligence" in establishing police training practices could establish a "policy" that constitutes a "moving force" behind subsequent unconstitutional conduct, or whether a more conscious decision on the part of the policy maker would be required. *Tuttle*, 105 S.Ct. 2436 n. 7.

Because we affirm the district court's ruling for the reason that Sprague's affidavit failed to controvert the contentions set forth in the Burley Police Chief's affidavit, we need not address the issue of whether the general "inadequate training" allegation can meet the "policy" requirement of *Monell*. The United States Supreme Court, in *Tuttle*, specifically left open this question and because we resolve the present case on other grounds, we should not attempt to furnish the answer by adopting what may be an overly broad holding by the district court.

## IV. SPRAGUE'S CLAIMS AGAINST THE OFFICERS

Sprague's first assignment of error with regard to the district court's order granting partial summary judgment on behalf of the officers alleges that the trial court erred in concluding that the officers had probable cause to stop and arrest Sprague. The district court acknowledged that generally the question of probable cause is one for the jury, and not one to be determined on a motion for summary judgment. *Patzig v. O'Neil*, 577 F.2d 841, 848 (3rd Cir.1978). However, it reasoned that the general rule does not preclude a trial court from granting a motion for summary judgment if there is no genuine issue of material fact in regard to whether there was probable cause for the arrest. The memorandum opinion stated in part:

In the case at bar, it is uncontroverted that the plaintiff's vehicle, while proceeding north on Overland Avenue in Burley, Idaho on August 5, 1982, was observed to be weaving back and forth within the northbound lane of traffic, and was also observed crossing over the center line into the southbound lane of traffic (Affidavit of Richard Thompson). The vehicle was observed straddling the center divider line (Affidavit of Michael Schiers). The vehicle was observed to swerve sharply into the left hand turn lane in the vicinity of the Burley Inn (Affidavit of Michael Schiers and Affidavit of Richard Thompson). The officer detected the odor of an alcoholic beverage on or about the person of the driver (Affidavit of Michael Schiers). The driver of the vehicle, the plaintiff Sprague, was observed to have glassy and bloodshot eyes and his speech was incoherent (Affidavit of Michael Schiers, Affidavit of Richard Thompson). The plaintiff indicated that he had had a couple of beers (Affidavit of Michael Schiers). Mr. Sprague was unable to comprehend questions (Affidavit of Richard Thompson). Mr. Sprague responded incoherently when questioned (Affidavit of Michael Schiers). Mr. Sprague refused to cooperate with the officers (Affidavit of Michael Schiers, Affidavit of Richard Thompson). Mr. Sprague's eyes were bloodshot, his speech was slurred, his physical coordination was impaired, and his thought process was inconsistent in that he would make a statement to one of the officers and subsequently contradict the previously made statement (Affidavit of Les

Steube). The odor of an alcoholic beverage emanated from Mr. Sprague (Affidavit of Les Steube).

In Sprague's unverified complaint, he alleged that he had been driving lawfully at the time prior to the stop; however, his affidavit in opposition to the motion for summary judgment did not controvert any of the assertions upon which the district court relied in determining that there was no genuine issue of material fact with regard to whether there was probable cause for the arrest. Since as to the issue of probable cause to arrest, Sprague merely relied on his pleadings and offered no affidavit or other evidentiary support for his position, the district court did not err in reaching that determination. I.R.C.P. 56(e); *Theriault*, 698 P.2d at 368.

We next address the issue of whether the officers, having lawfully stopped Sprague's vehicle, were entitled to order him out of the vehicle. Only "reasonable suspicion," not probable cause, is necessary to justify an investigatory stop, and "reasonable suspicion requires a lower quantum of proof than does probable cause." *United States v. White*, 648 F.2d 29, 42 (D.C.Cir.1981). In *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) the United States Supreme Court held that once a motor vehicle has been lawfully detained for a traffic violation, the police officer may order the driver to get out of the vehicle without violating the fourth amendment's proscription of unreasonable searches and seizures. The *Mimms* Court announced that a driver stopped for ticketing may be ordered out of his car without the officer showing any particular grounds for believing he was in danger, as "this additional intrusion can only be described as de minimis." *Mimms*, 434 U.S. at 111, 98 S.Ct. at 333. Hence, without any showing that the particular suspect may be armed, an officer may require a person lawfully stopped to alight from his or her car in order to diminish "the possibility, otherwise substantial, that the driver can make unobserved movements." *Mimms*, 434 U.S. at 110, 98 S.Ct. at 333. If officers may order a motorist

who is merely "stopped" out of his or her car, a fortiori, the officer may make that order of one whom the officer arrests.

■ Because we conclude that the district court properly found that the issue of probable cause did not present a triable issue of fact, the officers' allegations being uncontroverted, we hold that the court did not err in granting the officers' motion for summary judgment as to Sprague's claim of false arrest.

Since the officers had the authority to order Sprague out of his vehicle, we must next address the issue of whether the officers were also entitled to use the degree of force they employed in effecting the arrest. In his affidavit Sprague asserted that the officers struck his arms with their nightsticks, attempted to pull him from his vehicle and applied a karate chop to his left arm. In their affidavits in support of the motion for summary judgment, the officers conceded that they had attempted to pull Sprague from his vehicle, that they had used "do-rights," a pain compliance device, and made other physical efforts to extricate Sprague from his car.

■ It is well-established that a police officer can be found liable for damages under 42 U.S.C. § 1983 for the use of unreasonable force in effecting an arrest. *Schiller v. Strangis*, 540 F.Supp. 605, 619 (D.Mass.1982); *see, Landrigan v. City of Warwick*, 628 F.2d 736, 741–42 (1st Cir. 1980); *Collum v. Butler*, 421 F.2d 1257, 1259 (7th Cir.1970). Courts have held that force comparable to the force alleged in the present case is sufficient to state a cause of action for damages for deprivation of civil rights under § 1983. In *Delaney v. Dias*, 415 F.Supp. 1351 (D.Mass.1976), the court found that the complaint stated sufficient facts upon which relief could be granted under 42 U.S.C. § 1983, where the plaintiff alleged that he was handcuffed, struck in the head, punched, and hit during his arrest for carrying a firearm, discharging a firearm, and assault with attempt to murder. The court denied the police officers' motions to dismiss the com-

plaint, stating that sufficient facts were stated with specificity to allow the action to proceed, noting that misconduct by police officers during the performance of their duties is a proper basis for an action under 42 U.S.C. § 1983, particularly when excessive use of force is alleged. *Delaney*, 415 F.Supp. at 1352–53. *See also, Roberts v. Marino*, 656 F.2d 1112, 1114–15 (5th Cir. 1981); *Bellows v. Dainack*, 555 F.2d 1105, 1106–07 (2d Cir.1977); *Linn v. Garcia*, 531 F.2d 855, 861 (8th Cir.1976); *Demetruis v. Marsh*, 560 F.Supp. 1157, 1160 (E.D.Pa. 1983); *Buskirk v. Seiple*, 560 F.Supp. 247, 250–51 (E.D.Pa.1983); *Starstead v. Superior*, 533 F.Supp. 1365, 1368 (W.D.Wis.1982); *Di Giovanni v. City of Philadelphia*, 531 F.Supp. 141, 144 (E.D.Pa.1982); *Ellis v. Zieger*, 449 F.Supp. 24, 26 (E.D.Wis.1978).

▪ The district court's order granting summary judgment to the officers was premised on the theory that Sprague had failed to state a claim under § 1983 because the officers were protected from liability by a qualified or "good faith" immunity. The order, however, reached not only the claim of false arrest but Sprague's additional claims of wrongful assault and battery. In reaching this determination, the trial court apparently accepted the officers' argument that since they had probable cause for the arrest, they could use any amount of force thereafter and, regardless of the reasonableness of the force used, they were cloaked in immunity. This proposition finds no support in law or reason. While it is true that a police officer is entitled to "good faith" or qualified immunity for a warrantless arrest if the officer had probable cause to make the arrest,[1] that good faith immunity applies only to an allegation of false arrest, not to an allegation that the force used in effecting the arrest was excessive.

▪ It is generally accepted that the "good faith" or qualified immunity defense is an affirmative defense which the law enforcement official must plead and prove. *Dominguez v. Beame*, 603 F.2d 337, cert. den. 446 U.S. 917, 100 S.Ct. 1850, 64

L.Ed.2d 271 (1980). In the present case, the individual officers pled "good faith" immunity as an affirmative defense stating:

> All acts or omissions of the individual Defendants, if any, were performed under extraordinary circumstances, in good faith, without malice, with probable cause and were fully justified and reasonable under the circumstances and said Defendants are thereby immune from an award of damages.

The Supreme Court has recognized a qualified good faith immunity for state prison officials acting within the scope of their official duties when money damages are sought for violations under 42 U.S.C. § 1983. *Procunier v. Navarette*, 434 U.S. 555, 561–62, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978). The test for immunity in *Procunier* contained a subjective and objective prong. The subjective prong had been considered by some courts to be a question of fact; an issue to be resolved at trial. Thus, the issue of an official's subjective good faith could prevent granting of a motion for summary judgment.

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court eliminated the subjective prong of the immunity test. Now, the standard to be applied by the court is only objective. The Court set out the procedure for determining whether an official is entitled to immunity:

> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. *If the law was clearly established, the*

---

1. *Alvarado v. The City of Dodge City*, 10 Kan. App.2d 363, 702 P.2d 935, 942–43 (1985).

*immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.* Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors. *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738. (Emphasis added.)

Although *Harlow* did not involve an action under § 1983, the Court specifically noted "that it would be 'untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials.' " *Harlow,* 457 U.S. at 818 n. 30, 102 S.Ct. at 2738 n. 30 (quoting *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978)).

In the present case, the trial court declared:

The plaintiff has argued that the officers failed to inform Sprague that he was under arrest. There is no constitutional requirement that the officers so inform Mr. Sprague. The argument made is that the failure to inform Mr. Sprague that he was under arrest violated Idaho Code Sec. 19–608 which requires a police officer to inform a person that he is being arrested. However, Idaho Code Sec. 19–608 provides for an exception to such requirement; the facts of this case fall within that exception.

The United States Supreme Court in *Harlow* has established a threshold test that must be met by the plaintiff, if the defendant has asserted the affirmative defense of a qualified immunity, before a defendant's motion for summary judgment will properly be denied.

The *Harlow* test, under 42 U.S.C. Sec. 1983, is initially more onerous for the plaintiff than the requirement under the previous two-pronged test. This court finds that the plaintiff has failed to meet the threshold requirement of *Harlow,*

and therefore, the defendants, as police officers of the city of Burley, are protected from liability by good faith immunity under 42 U.S.C. Sec. 1983, for actions performed in the course and scope of their employment.

We conclude that the district court misapplied *Harlow,* to the facts of the instant case. The key questions to be answered under *Harlow* are whether at the time of the incident the law was clearly established so that the officers knew or should have known: (1) that Sprague had a right to be advised of the fact that he was under arrest or (2) that Sprague had a right not to be subjected to the use of excessive force in the effectuation of the arrest. We hold that the law as to these points was clearly established at the time of the incident and conclude that the district court erred in ruling to the contrary.

We first address the issue of whether the law was clearly established that an arrestee is to be informed of the officer's authority to make an arrest, the fact of the arrest, and the reason for the arrest. Sprague contends that at no time did the officers inform him of the fact that he was under arrest. The officers, on the other hand, contend that after Sprague refused to comply with their requests that he exit the vehicle, they informed him of the fact that he was under arrest. I.C. § 19–610 (1982) pertains to the amount of force that may be used in making an arrest:

*What force may be used.*—When the arrest is being made by an officer under the authority of a warrant, after information of the intention to make the arrest, if the person to be arrested either flees or forcibly resists, the officer may use all necessary means to effect the arrest.

Here, the officers had no warrant, and viewing the facts in the light most favorable to Sprague, did not advise him of the fact that he was under arrest. The officers urge that the same limits for use of force should apply to non-warrant situations where probable cause for an arrest exists. We agree with this assertion; however, the

fact remains that Sprague insists that he was not *informed* of his arrest as required by I.C. § 19–610 (1982) as a prerequisite to the use of *any* force. The district court erroneously accepted the officers' view that the issue of whether or not they had informed Sprague of the fact of his arrest is irrelevant in light of the provisions of I.C. § 19–608 (1982) which states:

*Information to person arrested.*—The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the person to be arrested is actually engaged in the commission of, or an attempt to commit, an offense, or is pursued immediately after its commission, or after an escape.

The officers contend that since Sprague was in the actual physical control of a motor vehicle at a time when they had reason to believe that he was driving under the influence of intoxicating beverages, he was in violation of I.C. § 49–1102 (1982) and, hence, was "engaged in the commission" of an offense. Therefore, the officers insist and the district court agreed that the officers did not need to inform Sprague of the fact of his arrest at the time they arrested him.

▮ We cannot agree with the trial court's very narrow, hypertechnical reading of the statute. The clear intent of the statute was to uphold an otherwise lawful arrest when, under the circumstances, it would not be practical for an officer to inform the arrestee of the fact of the arrest, the officer's authority to make the arrest, and the cause for the arrest (i.e. when a suspect flees). Here, the officers had stopped Sprague. There was no showing that he attempted to avoid them or failed to stop when they signaled him to do so. Moreover, Sprague complied with the officers' request that he produce his vehicle registration and driver's license. At that point, for all practical purposes, the officers, not Sprague, were in control of Sprague's vehicle. Simply stated, there was no reason for them *not* to advise him of the fact of his arrest, the reason there-

fore, and their authority to make the arrest.

▮ Under the strained reading of the statute urged by the officers, any time officers "arrest" a motorist for driving under the influence of intoxicating beverages, and the motorist is behind the wheel at the time of the "arrest," the officers can dispense with the need to apprise the citizen of the reason for the arrest, or even the fact of the arrest. Obviously, this was not what the legislature intended. Since we conclude that the trial court erred in determining that the facts of the instant case fall within the exception set forth in I.C. § 19–608 (1982) to the requirement that the person to be arrested be informed of the arrest, we cannot conclude that the officers were, as a matter of law, entitled to summary judgment on their defense of "good faith" immunity.

▮ Assuming, as Sprague asserts, that he was not informed of the fact of his arrest and that upon his refusal to exit the vehicle the officers immediately began using physical force to attempt to extricate him from his vehicle, the question is one of whether the officers acted reasonably under the circumstances. If a jury accepts Sprague's contention that the officers failed to advise him that he was under arrest prior to using physical force, that finding would be relevant to the factual inquiry of whether the force used was, under all the circumstances, excessive. There is little doubt that the provisions of I.C. § 19–610 (1982) and I.C. § 19–608 (1982) were clearly established at the time of the incident. A police officer should have known of these statutory requirements.

▮ We next address the issue of whether the law was clearly established that an arrestee has the right not to be subjected to the use of excessive force in the effectuation of an arrest. In *Skevofilax v. Quigley*, 586 F.Supp. 532, 538–39 (D.C.N.J.1984), the court stated:

In determining whether a defendant should receive the benefit of qualified immunity, the issue is almost invariably one of determining whether, as an objective matter, the defendant reasonably should have known the law under which his conduct is being assessed. Because ignorance of the law is never a defense in those matters, a defendant is presumed to know what the law is—if that law is clearly established. Thus, the inquiry reduces to a determination as to whether the law with respect to the conduct in question is settled or unsettled, a determination clearly beyond the jury's competence.

In the instant case, plaintiffs contend that the defendants participated in inflicting on them an illegal, unprovoked, and merciless beating. If plaintiffs are correct as a matter of fact, there cannot be any arguable claim that the officers' conduct was privileged—a policeman cannot defend by contending, for example, that he never heard of the Fourth or the Eighth Amendments. It is for the jury to determine the factual issue as to the conduct, not the legal issue as to the law.

Other courts have recognized that the good-faith defense to 42 U.S.C. § 1983 damage actions is not applicable to law enforcement officials who use excessive force in the performance of their duties, on the ground that such a use of force is, by definition, unreasonable and a deprivation of constitutional rights. *Scott v. Vandiver*, 476 F.2d 238, 240 (4th Cir.1973); *Williams v. Thomas*, 511 F.Supp. 535, 544–45 (N.D.Tex.1981); *Samuel v. Busnuck*, 423 F.Supp. 99, 101 (D.Md.1976); *Brudney v. Ematrudo*, 414 F.Supp. 1187, 1190 (D.Conn.1976); *Richardson v. Snow*, 340 F.Supp. 1261, 1263 (D.Md.1972); *Arroyo v. Walsh*, 317 F.Supp. 869, 870 (D.Conn.1970).

Whether the officers used excessive force in effecting Sprague's arrest is clearly a question of fact for the jury. *Paradise v. City of Minneapolis*, 297 N.W.2d 152, 155–56 (Minn.1980); *Luciano v. Ren*, 180 Mont. 187, 589 P.2d 1005, 1008 (1979); *Johnson v. Ray*, 99 Wis.2d 777, 299 N.W.2d

849, 852 (1981). Affirming a jury verdict in favor of the plaintiff for violation of 42 U.S.C. § 1983, the court in *Morgan v. Labiak*, 368 F.2d 338, 340 (10th Cir.1966) held that the trial court was correct in denying the defendant police officers' motion for a directed verdict, where it was admitted that the defendants made use of their nightsticks to dislodge a plaintiff from his property and take him to the city jail for disturbing the peace. The court stated that it was a question for the jury whether or not the force employed was unnecessary, unreasonable or violent and that, therefore, the court was correct in refusing to overturn the jury's verdict.

■■■ Courts have explained that in determining whether the constitutional line between the proper and improper use of force has been crossed, a court must look to such factors as "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973) *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Jones v. Marshall*, 528 F.2d 132 (2nd Cir.1975); *Hamilton v. Chaffin*, 506 F.2d 904 (5th Cir.1975); *Schiller v. Strangis*, 540 F.Supp. at 613.

Hence, defendants' argument here that an arrestee's right not to be subjected to excessive force was not clearly established at the time of the incident is patently without merit. Therefore, the district court clearly erred in concluding, as a matter of law, that defendants did not violate clearly established rights of which a reasonable officer would have known.

■■■ The question on summary judgment was, given the force the officers admittedly used to extricate Sprague from his vehicle, could reasonable minds have differed as to whether the force used was reasonable under the circumstances. On a motion for summary judgment all factual inferences must be drawn against the mov-

ing party. I.R.C.P. 56(c); *McCasland v. Floribec, Inc.*, 106 Idaho 841, 841–42, 683 P.2d 877, 877–78 (1984). Viewing the record before the district court at the time it granted the motion for partial summary judgment in the light most favorable to Sprague, the record reflects the following: (1) that the officers had probable cause to stop Sprague and arrest him for driving under the influence of intoxicating beverages; (2) that the officers ordered him to exit his vehicle for the purpose of performing dexterity tests; (3) that Sprague inquired as to the purpose for such tests; (4) that the officers refused to answer Sprague's question but immediately attempted to pull him from the vehicle; (5) that at no point did the officers inform Sprague that he was under arrest; (6) that Sprague attempted to remain in the vehicle; (7) that the officers struck him with nightsticks, applied a karate chop to his wrist, used "do-rights", a pain compliance device on him; yanked and pulled him and placed him in a wrist-lock; and (8) that as a consequence of the officers' actions he suffered serious injuries.

Clearly, on this record reasonable minds could conclude that the force used was excessive, assuming, as we must on a motion for summary judgment that controverted facts are as the opposing party alleges them to be. Construing the record in the light most favorable to Sprague, the officers failed to act in accordance with clearly established Idaho law and failed to act in accordance with clearly established Constitutional principles regarding the use of reasonable force in making a lawful arrest, the order of summary judgment was improper. Accordingly, the summary judgment order of the district court as to the § 1983 claims against the officers regarding assault and battery is reversed, it being a jury question as to whether excessive force was used which would entitle him to maintain a § 1983 claim or a common law claim for assault and battery.

## V. SPRAGUE'S CLAIMS UNDER THE IDAHO TORT CLAIMS ACT

I.C. § 6–903(a) provides:

(a) Except as otherwise provided in this act, every governmental entity is subject to liability for money damages arising out of its negligent or otherwise wrongful acts or omissions and those of its employees acting within the course and scope of their employment or duties, whether arising out of a governmental or proprietary function, where the governmental entity if a private person or entity would be liable for money damages under the laws of the state of Idaho.

However, where a governmental employee acts with malice or criminal intent, the governmental entity for whom the employee works may not be held liable. I.C. § 6–903(c) provides:

(c) The defense of its employee by the governmental entity shall be undertaken whether the claim and civil lawsuit is brought in Idaho district court under Idaho law or is brought in a United States court under federal law. *The governmental entity may refuse a defense or disavow and refuse to pay any judgment for its employee if it is determined that the act or omission of the employee was not within the course and scope of his employment or included malice or criminal intent. (Emphasis added.)*

In the present case, Sprague's amended complaint set forth the following allegations with regard to his state law claims:

The acts of the defendants and each of them constituted a willful and malicious assault and battery upon the plaintiff and a willful and malicious and wrongful arrest of the plaintiff.

. . . .

The acts, conduct and behavior of defendants and each of them were performed knowingly, intentionally, and maliciously. . . .

■ Since Sprague's amended complaint alleged that the officers acted with malice and further, since the Idaho Tort Claims Act specifically exempts governmental entities from liability where the employees act with malice, it is clear that as a

matter of law Sprague could not recover from the City of Burley. Hence, the district court properly granted the City's motion for summary judgment as to Sprague's state law claims against the City.

In light of the above analysis, we affirm the district court's order granting summary judgment to the City of Burley. We affirm the order granting summary judgment to the individual officers as to the claims of false arrest but we reverse the order granting summary judgment to the individual officers as to the § 1983 claim of excessive force and the state law claims of assault and battery, and remand the cause to the district court for further proceedings consistent herewith on the claims against the individual officers.

Costs to appellant. No attorney fees.

DONALDSON, C.J., and SHEPARD and BISTLINE, JJ. concur.

BAKES, J., concurs in Parts I, II, III and V, and concurs in the result in Part IV.