THE PEOPLE, RESPONDENTS, *v.* N. J. NASH, APPELLANT.

PROCESS DEFINED.—The word process, as used in the statute, is equivalent in meaning to the sheriff's official authority.

CRIMINAL LAW—PLEADING—DEMURRER. — The objection that an indictment charges two offenses must be taken by demurrer.

IDEM.—An objection to an indictment, that it sets forth no sufficient charge of a criminal offense, should not be allowed to prevail in a doubtful case, but only when the insufficiency is so palpable as clearly to satisfy the mind of the judge that a verdict thereon would not authorize a judgment.

DEGREE OF PROOF.—It is not necessary for the prosecution to exclude every possible defense in order to secure a conviction.

OBSTRUCTING OFFICER—NOTICE.—While the statute requires an officer to inform a party upon whom he is about to serve criminal process of his office and purpose, this need not be done when the officer is well known to such person.

APPEAL from the second judicial district, Boise county.

*Rosborough & Preston,* for the appellants:

An indictment under a statute must state all such facts and circumstances as constitute the statutory offense, so as to bring the party indicted clearly within the provisions of the statute. (*People* v. *Cohn,* 8 Cal. 43; *Commonwealth* v. *Brown,* 8 Mass. 65; *Commonwealth* v. *Phillips,* 16 Pick. 213; *People* v. *Muckler,* 9 Cal. 44; *People* v. *Saviers,* 14 Id. 30;

*People* .v. *Allen,* 5 Denio, 76; *People* v. *Taylor,* 3 Id. 91.) The charge, as laid in the indictment, that the officer was in the "discharge of his duty as such sheriff," is too general. (1 Archb. Crim. Pr. and Pl. 291; Id. 146.) The indictment should show what duty the sheriff was performing, so that the court may see that it was official duty. (2 Id. 290 et seq.)

*J. J. May, district attorney,* for the people.

McBRIDE, C. J., delivered the opinion of the court, CUMMINS, J., concurring, KELLY, J., dissenting.

The defendant was indicted for resisting an officer while in the discharge of his official duty, by assaulting him with a pistol. On arraignment in the lower court the defendant demurred to the indictment on the ground that it did not allege "that Crutcher (the officer) was attempting to serve any process, or that he had any process to serve at the time," etc. This the court overruled and defendant excepted, and now assigns said ruling as error. The defendant then entered the plea of not guilty, and on the trial was convicted of the offense alleged in the indictment. On the trial the court was asked to instruct the jury as to several questions suggested by defendant; some of these instructions were refused and others given, as appears by the record, to which exceptions were taken. After the verdict the defendant moved in arrest of judgment, and though several grounds are assigned, we can only consider one of them, because under the provisions of section 293 objections which are grounds of demurrer can only be taken advantage of on demurrer, except two, viz., want of jurisdiction in the court, and that the facts stated do not constitute a public offense. Inasmuch as the defendant did not urge on demurrer the objection that the indictment charged more than one offense, and that it does not conform to the requirements of the two hundred and thirty-third and fourth sections of the criminal practice act, she is precluded from raising them afterwards, except the objection that the indictment does not show facts constituting a public offense. (Crim. Pr. Act, sec. 293.)

The motion in arrest of judgment was denied, as also a motion for a new trial based on the exceptions, and on appeal all the objections are before us for review. We have before us, therefore, three propositions:

1. The sufficiency of the demurrer.

2. Was there sufficient in the indictment to show that an offense had been committed?

3. Was the motion for new trial properly denied?

As to the demurrer, though the statute provides five distinct grounds of demurrer the defendant urged but one, and it is not a little difficult to say whether that was intended to be under the second or fourth subdivision of the section (285) which specifies the various causes of demurrer. The language of the demurrer is that the indictment "does not set forth facts sufficient to constitute the crime alleged therein, in this, that it does not appear that said James I. Crutcher was attempting to serve any process at the time of the alleged assault, or that he had any process to serve," etc. I take it that the defendant meant by this demurrer to except to the sufficiency of the facts charged to constitute the offense named in the indictment. He did not mean to say that there was no such public offense, but only that the statement of it was insufficient in the particular suggestions, viz., that the officer assaulted was armed with such process as to make an assault upon him a crime.

The question then is, what kind of process is it necessary for an officer to have in order to make resistance to him an offense? Does the law require that he should be armed with a written process from some court, in order that the offense of resistance to the officer could exist? Is there any unwritten process, any power inherent in the officer which is equivalent to written process from some court, which requires of him the performance of official duties, and which protects him while in their performance? The answer is found in the statute. All of the official duties of the sheriff are there prescribed and enjoined, and they are, briefly, to serve the written commands of the various courts in his county, to obey the directions of such courts as their ministerial officer, to collect certain taxes, and perform

various duties of a general character prescribed by the statutes. All these obligations imposed by law are comprehended and clearly described by the term "official duties." The statute punishes the offense of resisting the sheriff while he is serving or attempting to serve process. Does this mean that he shall be protected while he is serving written process only, and that there can be no offense in other cases of resistance. The defendant contends that this is the law, but we think erroneously. I think that the word process, as found in the statute, is used in its extended or unlimited sense, and is equivalent to the sheriff's official authority. It would be a strange law that would require an officer under the sanction of an oath and the obligations of an official bond, to perform certain prescribed duties without any written process whatever, and yet leave him with no protection other than that which is common to every citizen. In many instances, when the most crimes are committed, and the most offenders are to be apprehended, and the greatest risk and danger are to be incurred, no time can be given to the duty of getting out process. Is an officer to run the hazard of losing his life while executing his duty under such inconsistencies, and the criminal to be left to resist without any fear of punishment except such as would be meted out to him if it were an encounter with a private individual? Such a construction of the law is unreasonable and utterly inconsistent with the prevailing principle which everywhere in our jurisprudence makes duty on the one hand and protection on the other co-equal and co-extensive. Such a construction of the law is founded on the letter which killeth, not the spirit which giveth life; and I can not assent to it. I can not agree to a construction of the statute which obliges an honest officer in this land of violence to take his life in his hands, and go out in the discharge of his duties and furnishes no shield for his faithfulness while thus engaged, and whenever he is resisted, while in the discharge of his duty, the person so offending can not plead in palliation of his violence that the officer was without written process.

He may show that he was acting without authority, but the form of the authority is nothing to him.

That this is correct is evident from the statute itself. The language in section 100, crimes and punishments, is: "Any person who shall willfully obstruct, resist, or oppose any sheriff, etc., in serving or attempting to serve any law process, or order of any court, judge, justice of the peace, or any other legal process whatever. Strictly speaking, process," as its etymology shows, is something issuing out of, or from a court or judge, and if the statute had stopped there some force would be given to the defendant's construction of the term, but in order to cover any conceivable cause of official duty the legislature adds "or any other legal process whatever." That this means all cases when the sheriff is engaged in duty enjoined by law is clear or it would be a useless sentence. It was to carry out the principle that duty to perform and protection in that duty should go hand in hand.

This being the case, it follows that no matter whether the officer was serving a warrant of arrest, civil process for attachment of goods, or distraining for taxes due, the defendant in resisting him, while discharging his official duty, was resisting him while serving process and would be guilty under the statute. The crime would be as great in civil as in criminal cases, when he had a warrant as when he had none, and no less a crime in the latter than the former. The question would be whether he was in the performance of some duty either ordered by a court or enjoined by law, and if defendant knew that he was so engaged, the kind of process could be a matter of no consequence. These positions as to what is legal process are affirmed in the case of the *People* v. *Nevins*, 2 Hill, 166-9, by Judge Cowan in a decision where the whole question is fully and elaborately discussed, and fully sustains all that I claim for the term process in this case.

2. The motion in arrest of judgment claims; 1. That the indictment charges more than one offense. As this objection was not urged by the demurrer it was too late to take it after trial (see sec. 293); 2. That the indictment

does not substantially conform to sections 233 and 234 of the criminal practice act. For the reason assigned above we can not consider this objection, except so much of it as is found in the third allegation of the motion and which is, 3. That the facts stated do not constitute a public offense. This I now proceed to consider.

In the case of the *Commonwealth* v. *Eastman*, 1 Cush. 214, the court say that such a motion (to quash because the indictment sets forth no sufficient charge of any criminal offense) "should not be allowed to prevail in a doubtful case, but only when the insufficiency of the indictment is so palpable as clearly to satisfy the presiding judge that a verdict thereon would not authorize a judgment against the defendant." This is stating the doctrine very strongly, but it shows how careful, even in a state where the greatest strictness prevails, the courts are in requiring a substantial legal defect instead of a mere technical weakness, to defeat an indictment. With some strictness ought the rule to be applied after a verdict has been had. It is true that if it appears that all the facts charged are admitted there would still be no crime, such an indictment is worthless, and even after verdict should be set aside; but if an indictment contains all the elements of crime in its charges, let them be ever so defectively stated, and the defendant do not demur and stand upon the defect, but goes to trial and a verdict is found against him, the presumption is that the proof must have established all that was necessary to convict, and he can not be heard to impeach the weakness of the charge. The charge in this case is that the defendant was guilty of the crime of resisting an officer.

This is an offense at common law and under our statute. Blackstone says: "Obstructing lawful process is at all times an offense of a very high and presumptuous nature, but more particularly so when it is an obstruction of an arrest upon criminal process. And in civil cases resistance will justify an officer in proceeding to the last extremity. So that in all cases, civil or criminal, when persons having authority to arrest or imprison are resisted in so doing while using the proper means for that purpose, they may

repel force with force, and need not give back." (Archb. 787.) Also, p. 852: Officers of justice while in the execution of their offices are under the peculiar protection of the law, and killing them whilst so doing is murder. Note, also, sheriffs, constables, watchman, etc., while in the due execution of their duties, are under the peculiar protection of the law—a protection founded in wisdom and equity—for without it the public tranquillity can not be maintained nor private property secured; nor, in the ordinary course of things, will offenders of any kind be amenable to justice. Again, in the text, same page, the author says: "Every person acting in lieu of peace officers, whether commanded to do so or not, enjoys the same protection as the officers themselves." He also adds, p. 856: "Also in civil suits the officer who executes the process of the courts is entitled to the same protection as an officer of justice in criminal cases."

These citations sufficiently establish the position that resistance to an officer in the execution of his duties is an offense punishable both at common law and by statute. When, therefore, a charge is made that the defendant resisted the officer while in the discharge of his official duty by assaulting him with a pistol as in this case, there can be no question that it presents a statement which, if true, is a crime, and the question is whether the words of the charge bring the case within the provisions of section 100, of the act of crimes and punishments. If I am correct that when the officer is performing any duty in administering the civil or criminal law which is enjoined upon him, and I think the authorities quoted establish this, then the allegation in this indictment, though not in the language of the statute, is embraced by it. The phrase, while in the discharge of official duty, is more general than the one found in the statute, but the latter is clearly within its meaning. If the defendant had objected by demurrer that it was too general; that it did not clearly show what duty the officer was performing; that it was not sufficiently explicit in setting out the circumstances of the offense—I think the objection would have been good. But, having waived a fuller statement of the facts, he can not urge it now. The right to require the par-

ticulars of the offense, such as whether the officer was there to arrest the defendant, to search the premises for some other offender, or to attach her goods—these are facts which she might require for the purpose of knowing precisely the offense, by identifying it by its attendant circumstances; but to allow a party to sleep on these rights through a trial, when they must have been proven in order to a conviction, and then deny their existence because they did not as fully show upon the indictment as they might have been required to be, is simply to trifle with forms. Even if it were not punishable under the statute for resisting an officer, it would clearly be at common law, as I have shown by the citation from authority; and admitting that the indictment is defective for that purpose, and that no conviction could be had for resisting an officer because of defective statement of the officer's duty and authority, the charge for assault on the sheriff is good in every particular. The last objection that the indictment contains no offense in the motion for arrest of judgment is consequently not sustained, and was properly overruled. The next point presented as showing ground for reversal is error of the court below in its instructions to the jury.

The first error relied upon is the instruction that the presumption of law was in favor of the rightfulness of the sheriff's proceedings in entering the defendant's house to make the arrest and search, and if the circumstances which would legally authorize an arrest and search without warrant did not exist, it devolved on the defendant to show their non-existence. This instruction is based on the familiar rule that when the unlawful act which would constitute the offense is proven, anything that goes to show innocence comes from the accused. It is not for a prosecution to exclude any possible defense in order to a conviction. In this case Crutcher, the sheriff, who was assaulted, testified that he believed Watson was guilty of a felony, that he was informed he was in defendant's house, and went there to arrest him. This would authorize the issuance of a warrant, and if the facts as stated were believed by him their absolute truth was unimportant. Watson may have been

entirely innocent—he may not have been about defendant's house.   Still that would not justify an assault upon an officer who believed the contrary, nor relieve him from the duty of making the arrest wherever found.   When the sheriff believed a felony had been committed by Watson, that he was concealed in defendant's house, he not only was authorized to arrest but it was his duty to do so, with or without warrant.   If Watson, though falsely accused, could, if found, have been compelled to submit to arrest, and there is no doubt of it, could the defendant resist the sheriff in attempting his arrest and not be guilty ?   To show innocence, the defendant should show that the officer was proceeding without any cause to suspect—in other words, acting in bad faith. This is the only check on his discretion—bad faith or without probable cause.

The second objection to the instructions is that the jury was instructed by the court below, "that if the defendant knew Crutcher was the sheriff it was not necessary for him to announce his office" when he came to make the arrest at the time of the resistance.   The statute requires that an officer should inform a party of his office and his purpose when he is in the execution of process, but this becomes an idle formality when the officer is known.   The sheriff in this case swears that he was known to the defendant as sheriff, and that he did inform her of his object.   The law does not require a useless parade of official pedigree to a party already knowing it.   Following this reasonable rule Mr. Archbold says (857):  "The officer must give notice to the party of his authority to bring himself within the protection of the law; unless indeed the party already knows it."

The motion for new trial, therefore, on these alleged errors in the instructions, and others which have been noticed in passing on the motion in arrest of judgment, and the demurrer was, I think, rightly denied.

Judgment affirmed.