# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36578-2009

STATE OF IDAHO, )
)
Plaintiff-Respondent, )
)
v. )
)
WALTER E. MOORE, )
)
Defendant-Appellant. )
)

Boise, November 2010 Term

2010 Opinion No. 115

Filed: November 24, 2010

Stephen W. Kenyon, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Bonner County. The Hon. John P. Luster, District Judge.

The judgment of the district court is affirmed.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Eric D. Fredericksen argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

---

EISMANN, Chief Justice.

The appellant contends that the district court erred in ruling that it did not have authority to order the Idaho Department of Correction to return a prior presentence investigation report and that it abused its discretion in imposing sentence. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Walter E. Moore was charged with lewd conduct with a child under sixteen years by an information alleging that Moore had oral-genital, manual-genital, and/or genital-anal contact with a six-year-old boy with the intent to arouse, appeal to, or gratify Moore's lust, passion, or sexual desire in violation of Idaho Code § 18-1508. On June 5, 2003, Moore pled guilty to the charge, although he denied penetrating the boy anally. The plea agreement provided that the State would not file additional charges regarding the same victim; that the State would recommend a sentence of at least fifteen years incarceration up to life; and that the prosecuting

attorney would encourage the United States Attorney not to file additional federal charges against Moore.

Moore submitted to a psychosexual examination in preparation for the sentencing. The report regarding that examination was included in his presentence investigation report (PSI) and was considered by the court. On September 2, 2003, the district court sentenced Moore to incarceration for life, with fifteen years fixed and the balance indeterminate. Moore appealed, and the Idaho Court of Appeals affirmed his conviction and sentence in an unpublished opinion.

Moore later filed a petition for post-conviction relief. Based upon this Court's opinion in *Estrada v. State*, 143 Idaho 558, 149 P.3d 833 (2006),[1] Moore's sentence was vacated for ineffective assistance of counsel with respect to his psychosexual examination. Moore submitted to a new psychosexual examination, and a new PSI was prepared. The 2003 PSI, which included the first psychosexual examination report, was sealed and was not reviewed by the sentencing judge, which was not the same judge who had previously sentenced Moore.

After Moore was sentenced the first time, a copy of his 2003 PSI was delivered to the Idaho Department of Correction. Before Moore's resentencing, his attorney asked the district court to order the Department to return its copy of that PSI to keep it from being taken into account when Moore was considered for parole. The court denied the request stating that it had no authority to order the Department to return the PSI. The court sentenced Moore to life in prison, with thirteen years fixed, and Moore appealed.

## II. ISSUES ON APPEAL

A. Did the district court err in denying Moore's motion to order the Department of Correction to return the 2003 PSI?

B. Did the district court abuse its discretion in imposing sentence?

## III. ANALYSIS

**A. Did the District Court Err in Denying Moore's Motion to Order the Department of Correction to Return the 2003 PSI?**

---

[1] In *Estrada*, we held that a defendant who had pled guilty still had a Fifth Amendment right against self-incrimination with respect to a court-ordered psychosexual evaluation.

2

Prior to Moore's resentencing, he filed a motion for an order "directing that all presentence reports, including psychosexual evaluation and polygraph examination reports prior to the current Presentence Report filed February 17, 2009, and its attachments, be removed from the Defendant's IDOC [Idaho Department of Correction] record and the Court record." The basis of the motion was that such record was the result of an investigation conducted in violation of Moore's rights under the Fifth Amendment to the Constitution of the United States. The district court heard that motion on March 23, 2009. In denying the motion, the court said:

> Furthermore, I don't think I can order the Department of Corrections [sic] to do anything with the information that they already have. I'm not even sure I have the jurisdiction at this point in time to interfere with that. Perhaps some collateral action that Mr. Moore may want to bring so the Department of Corrections [sic] may not use that information inappropriately, but I don't think I can reach out and grab that information that was already distributed some five years or so ago to the Department of Corrections [sic].

The court did order that the 2003 PSI be sealed and that another copy of it not be forwarded to the Department after Moore's resentencing. The court also stated that it had not reviewed the 2003 PSI and would not do so.

Idaho Code § 20-237 requires that "a copy of the presentence investigation report, if any, . . . shall be delivered into the custody of the director or his representative at the time of or prior to the delivery of the convicted person to the department." The statute does not state that the court is to lend the Department a copy of the PSI, nor does it grant the court authority to demand the return of a PSI. Moore has not cited any authority that would give the court that power.

Moore contends that Idaho Criminal Rule 32(h) implies that the court has that authority. The portion of the Rule upon which Moore relies states, "Provided, the presentence report shall be available to the Idaho Department of Corrections [sic] so long as the defendant is committed to or supervised by the Department, and may be retained by the Department for three years after the defendant is discharged." He contends that if the court can require the Department to return a PSI "three years after the defendant is discharged," it can order the Department to return the PSI earlier.

Before addressing that issue, we should point out that this is not an action against the Department in which Moore is seeking to vindicate a Constitutional right. The Department is not a party to this case. Rather, Moore contends that the district court can unilaterally order the

3

Department to return a document that the court had delivered to it pursuant to a statutory mandate.

> Article II, § 1, of the Idaho Constitution provides:
>
>> The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.

"The separation of powers doctrine embodies the concept that the three branches of government, legislative, executive and judicial, should remain separate and distinct so that each is able to operate independently." *Sweeney v. Otter*, 119 Idaho 135, 139, 804 P.2d 308, 312 (1990). The Department is "an executive department of state government." Idaho Code § 20-201. Idaho Code § 20-237 requires the district court to provide the Department with a copy of a defendant's PSI. The statute does not limit the period of time that the Department may retain the copy of the PSI, nor does it or any other statute authorize the court to demand the return of a PSI. This Court has no authority to determine the Department's record retention policies. The district court did not err in ruling that it lacked the authority to order the Department to return the 2003 PSI. It is unlikely that all of the information in the PSI was allegedly obtained in violation of Moore's Fifth Amendment rights. If Moore contends that the Department's consideration of some of the information would violate his Fifth Amendment Rights, he can address that matter with the Department.

**B. Did the District Court Abuse Its Discretion in Imposing Sentence?**

The district court sentenced Moore to life in the custody of the Idaho Department of Correction, with thirteen years fixed and the balance indeterminate. Moore contends that the sentence is "excessively harsh" because he suffered physical and sexual abuse as a child, he did not have any prior felony convictions, he expressed remorse for his actions, and while in prison he has worked to better himself and to help others.

"We review the length of a sentence under an abuse of discretion standard." *State v. Al-Kotrani*, 141 Idaho 66, 70, 106 P.3d 392, 396 (2005). "When a sentence is challenged as being excessively harsh, we independently review the record on appeal, having due regard for the nature of the offense, the character of the offender, and the protection of the public interest."

4

*State v. Jeppesen*, 138 Idaho 71, 76, 57 P.3d 782, 787 (2002). "[W]hen doing so we consider the defendant's entire sentence." *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). However, "[w]e presume that the fixed portion of the sentence will be the defendant's probable term of confinement. That is because whether or not a defendant serves longer than the fixed portion of the sentence is a matter left to the sole discretion of the parole board . . . ." *Id.* (citation omitted). "When determining whether the sentence is excessive, we must consider: (1) the protection of society; (2) deterrence of the defendant and others; (3) the possibility of the defendant's rehabilitation; and (4) punishment or retribution for the defendant." *State v. Strand*, 137 Idaho 457, 460-61, 50 P.3d 472, 475-76 (2002). "In order to show that the sentence imposed was unreasonable, the defendant must show that the sentence, in light of the governing criteria, is excessive under any reasonable view of the facts." *State v. Cannady*, 137 Idaho 67, 73, 44 P.3d 1122, 1128 (2002).

Moore admitted to performing multiple acts of fellatio on the six-year-old victim. He also had the victim's four-year-old brother photograph one of the sexual encounters. Whether there are other victims is unknown. He submitted to a polygraph examination and was asked: (a) "Other than what you have disclosed do you have any other victims of your sexual abusive acts not disclosed today?"; (b) "Other than what you have disclosed are you withholding any additional sexual deviant behaviors from disclosure today?"; and (c) "Are you lying about the number of individuals you have sexually abused?" Moore answered "No" to each of these questions, but in the polygraphist's opinion Moore's answers to these questions were deceptive. Moore also had significant amounts of child pornography at his residence along with assorted child's underwear with names and ages written on some of them.

When interviewed for the 2009 PSI, Moore "listed the abuse he suffered as a child, physical/emotional/sexual, as a problem area that caused him to commit his crime." However, in the psychosexual evaluation done on December 16, 2008, Moore reported "that he has no memory of childhood sexual play or incidents of sexual abuse." In his psychosexual evaluation, Moore described the physical abuse he suffered as his mother one time throwing scissors at him that struck him in the face, breaking his nose, and her one time beating him with a baseball bat. The apparent emotional abuse was that "his family's constant moving caused him to feel insecure" and "[h]is father was a workaholic and wasn't there for him even when he was there." The 2009 PSI reports that in the 2003 PSI Moore "was asked to list the problem areas he felt

caused him to commit his crime. He listed, 1) selfishness, 2) sexual, and 3) stress." The "sexual" was apparently his fascination with child pornography, his sexual attraction to pre-pubescent children, and his sexual fantasies about the victim.

Although Moore may have expressed remorse at his second sentencing, after serving time in prison, the court need not have given it any weight. It would be a very obtuse defendant who did not express remorse at sentencing after having pled guilty. In addition, Moore's deceptive answers on his polygraph and during the testing in his psychosexual evaluation show a lack of credibility. Moore's responses on the Minnesota Multiphasic Personality Inventory produced "only a marginally valid profile because of his attempt to present himself in an overly positive light." Persons with such a defensive stance "project an excessively positive self-image." His responses to the Sexual Adjustment Inventory suggested that he was "deliberately minimizing his problems and concerns."

There was another PSI prepared in 2008. Even then his response showed an attempt to minimize his responsibility and to place blame on the victim. Moore stated he had been having sexual fantasies about the children in his life, and the victim " 'made himself available', by coming over to the house." He also stated that when he approached the victim sexually, "the child did not object."[2]

With respect to Moore's risk of recidivism, the psychosexual evaluator wrote that Moore is "a High Current risk priority for sexual and violent recidivism and High priority for general criminal recidivism." The evaluator also wrote, "Because his victim was known to him and his apparent interest in child pornography, there is no indication at this time that Mr. Moore would not be capable of such behavior in the future if presented an opportunity." Men with Moore's profile on the Minnesota Multiphasic Personality Inventory "are unlikely to seek psychological treatment or fully cooperate with treatment if it is implemented." In the evaluator's opinion, "Mr. Moore is not a good candidate for community-based treatment at this time" and "there is a high probability that Mr. Moore would be among the 14 percent of offenders who recidivate within five years of release." The evaluator concluded, "It is this evaluator's opinion that at the discretion of the court Mr. Moore should be kept under sex offender supervision for as long a time as possible."

---

[2] At sentencing, Moore's attorney stated that Moore was not blaming the child by this statement.

There was absolutely no excuse or justification for Moore's crime. The two boys were totally innocent and did not in any way induce or facilitate Moore's commission of the crime. There was scant information in the PSI regarding the harm caused the two boys, although the 2009 PSI states that Moore "clearly realizes the long-lasting damage his crime has caused." The children's mother gave an oral victim impact statement at sentencing, in which she stated, "He's killed my kids' soul, pride, their self-respect of ever knowing what it's like to be a normal child . . ."

Although Moore asserts that the sentence is "excessive," he does not designate whether it is the fixed portion, the indeterminate portion, or both that is allegedly excessive. He likewise does not state what sentence he believes would have been within the district court's discretion. Nevertheless, Moore has not shown that the district court abused its discretion in imposing either the fixed portion or the indeterminate portion of the sentence.

## IV. CONCLUSION

We affirm the judgment of the district court.

Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR**.