# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48633

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, June 2022 Term |
| | ) | |
| v. | ) | Opinion filed: November 1, 2022 |
| | ) | |
| CLARENCE EDWARD LANCASTER, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Jason D. Scott, District Judge.

The orders of the district court are <u>affirmed</u>.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Appellant. Justin Curtis argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Kenneth Jorgensen argued.

_____

MOELLER, Justice.

Defendant Clarence Lancaster was apprehended by police for questioning concerning several ATM thefts in Boise, Idaho. He was later charged and ultimately entered conditional guilty pleas to two felonies: burglary and grand theft. This appeal arises from the denial of his motion to suppress. Lancaster argues that his confession and other evidence should have been suppressed because the arresting officers violated Idaho Code section 19-608 by failing to tell Lancaster the basis of his arrest. He maintains that this statutory violation renders his arrest an unreasonable seizure under Article 1, Section 17 of the Idaho Constitution. He also argues that the district judge abused its discretion at sentencing by failing to strike an attachment to the Presentence Investigation Report. For the following reasons, we affirm the district court.

### I. FACTUAL AND PROCEDURAL BACKGROUND

1

In the spring of 2019, three ATM machines were stolen from different locations around Boise, Idaho. These crimes took place over the course of a month. Police officers investigating the thefts suspected a single criminal—a serial ATM thief—to be the culprit. During the investigation of the third ATM theft, police obtained security footage of the suspect's vehicle: an Enterprise rental car with a Utah license plate rented to Clarence Lancaster. Police also connected Lancaster's rental vehicle to a series of vending machine break-ins that occurred at multiple locations across the Boise State University ("BSU") campus around the same time.

On May 26, 2019, investigating officers relayed descriptions of Lancaster and his rental car to all patrol vehicles in the area. Later that same day, Officer Brek Orton saw a driver in a vehicle matching the descriptions. While the vehicle had no visible license plates that Officer Orton could see, matching Utah plates from the ATM thefts were later found partially obscured in the vehicle's back window. Officer Orton followed the vehicle to the parking lot of an Albertson's grocery store near BSU.

As the driver exited the vehicle and began walking towards the store's entrance, Officer Orton called out Lancaster's name ("Clarence, stop! You—Clarence!"). The man told Officer Orton his name was "Wally Johnson" and asked why he was calling him "Clarence." Officer Orton replied, "Do you, do you want to play the nice guy or do you want to lie to me and get a, a criminal charge?"

When Officer Orton asked for identification, Lancaster began to lead him back to his vehicle. Lancaster told Officer Orton he did not own the vehicle but was renting it from Enterprise. At that point, Officer Orton instructed Lancaster to place his hands behind his back. While handcuffing Lancaster, Officer Orton twice asked, "Why are you lying to me about who you are?" Lancaster responded: "Now what are you looking for me for?" To answer, Officer Orton simply told Lancaster, "I think you probably know."

On reaching the rental vehicle, Officer Orton began to search Lancaster's pockets and found a credit card bearing Lancaster's name. Lancaster admitted that he gave the officer a false name earlier and said, "If you're looking for me, then that means I'm already in trouble." Officer Orton replied, "There's a reason why I'm looking for you, and we'll explain that all to you when we get you up to the station." About this time, Officer Lane, a K9 officer, and Sergeant Rogers each arrived on the scene.

Lancaster asked all the police officers questions to "figure out what [was] going on." They repeatedly told Lancaster he was going to the police station for questioning by detectives, but they never specified why. While the officers retrieved Lancaster's medications from his vehicle, Officer Lane took Lancaster to a side area. Lancaster again said, "So what's going on?" Officer Lane answered, "Well, there's going to be somebody who wants to come talk to you. Okay? Well, and actually we're probably going to go somewhere else to talk to this person."

While apart from Officer Lane and Lancaster, Sergeant Rogers asked Officer Orton about the charges for Lancaster's arrest. Officer Orton said, "That burg. Basically for burg." "Anything else?" asked Officer Rogers. "No," said Officer Orton. "I mean he tried to ditch me but then he lied to me, so I can . . . ." His answer trailed off on the body camera footage as Officer Rogers radioed other police, but Officer Orton then returned to Officer Lane and Lancaster. Again, Lancaster asked Officer Orton what was going on. Officer Orton's response to Lancaster was: "We're going to take you up to our police station and there's a detective who wants to speak with you. Okay? He'll be able to advise you on everything that's going on." A couple of minutes later, while waiting under some shelter in the rain, Lancaster told Officer Lane, "So you can't tell me what's going on?" Officer Lane responded, "I don't know what's going on . . . I just run a dog, I'm a dog guy," and repeated that a detective wanted to talk to Lancaster.

Officer Wilson then arrived on the scene to escort Lancaster to the police station for questioning. After putting Lancaster in the back of her police vehicle, Officer Wilson asked Officer Orton and Officer Lane where she was supposed to take Lancaster and whether they had warrants for his arrest. They both responded that Lancaster was "the ATM thief," and told Officer Wilson to take Lancaster to the station to meet with investigating detectives for questioning. Lancaster was in the vehicle and not privy to the conversation. However, en route to the station, Lancaster said to Officer Wilson, "You don't know why I was stopped either." Officer Wilson responded that she "had an idea" but did not want "to talk out of turn" when it was not her case.

When the interviewing detectives met with Lancaster at the police station, he claimed he still did not know why he was being held. The two officers then read Lancaster his *Miranda* rights and began to question him on both the Boise ATM thefts and the vending machine break-ins on the BSU campus. While Lancaster initially denied knowledge of any crimes, he eventually admitted to being the person depicted in the security camera footage and confessed to stealing the three ATMs. Lancaster also told police where he hid the stolen machines in a field of tall grass.

3

Per Lancaster's directions, police recovered all three broken ATMs in the field, along with additional evidence hidden near some railroad tracks. However, Lancaster never confessed responsibility for the BSU burglaries.

Following Lancaster's confessions, police transported him to the Ada County Jail on three charges of burglary—one for each ATM theft. The State later added four more burglary charges for the additional vending machine break-ins that had occurred on the BSU campus between May 22 and 25, 2019. Lancaster moved to suppress his confession and other evidence resulting from his arrest, arguing police violated Idaho Code section 19-608 because he was never told the basis of his arrest until after the confession occurred. The State argued that Lancaster was not arrested "until after he had confessed at the police station, at which point he was told why he was being arrested." The district court disagreed. It determined that a de facto arrest occurred, at the very latest, when Officer Wilson placed the handcuffed Lancaster in her police vehicle for involuntary transportation to the police station. The district court likewise concluded that the officers violated Idaho Code section 19-608 by failing to give any reason for the arrest over the several hours between Officer Orton's initial contact and the conclusion of detectives' questioning at the police station. However, the district court also determined that the violation of Idaho Code section 19-608 did not rise to a constitutional level that would require suppression of the evidence. Therefore, the district court denied Lancaster's motion.

Lancaster filed a motion for reconsideration, which the district court denied. Following that decision, Lancaster entered a conditional plea agreement. He pleaded guilty to one count of burglary and one count of grand theft, in exchange for binding concurrent sentences of ten years determinate, with 1.5 years fixed, while preserving his right to appeal the denied suppression motion. The court entered Lancaster's guilty pleas at a hearing and subsequently ordered a presentence investigation report ("PSI").

Following the PSI's preparation and prior to his sentencing hearing, Lancaster filed a new motion with the district court to correct various alleged errors in the prepared PSI. The PSI included two prior PSIs as attachments: one prepared in connection with a 2009 Utah case and another from a 2015 federal case. He claimed the Idaho PSI contained several prejudicial statements and various inaccuracies regarding his criminal history. The district court reviewed each of the alleged errors at the sentencing hearing, accepting some and rejecting others, while also finding there were some discrepancies between the Utah and Federal PSIs in regards to

criminal history. The district court also determined that it would use the Federal PSI as the authoritative source for Lancaster's criminal history and not consider the inconsistencies in the Utah PSI. Following the sentencing hearing, the Idaho Department of Correction issued a corrected copy of Lancaster's PSI pursuant to the district court's orders.

Pursuant to the sentencing hearing, on February 5, 2021, the district court entered Lancaster's judgment of conviction for felony burglary and felony grand theft, sentencing him to concurrent unified sentences of 10 years, with the first 1.5 years fixed. The district court also ordered Lancaster to pay $15,119.84 in restitution to the victims. Lancaster timely appealed to this Court regarding both his denied motion to suppress and the district court's determinations regarding his PSI.

## II. STANDARD OF REVIEW

Where this Court reviews a denial of a motion to suppress evidence, we apply a bifurcated standard of review. *State v. Clarke*, 165 Idaho 393, 396, 446 P.3d 451, 454 (2019). This Court "gives deference to the trial court's findings of fact, which will be upheld so long as they are not clearly erroneous." *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009). "Findings of fact are not clearly erroneous if they are supported by substantial and competent evidence." *Id.* Likewise, "[d]ecisions regarding the credibility of witnesses, weight to be given to conflicting evidence, and factual inferences to be drawn are . . . within the discretion of the trial court." *Id.* Nevertheless, "this Court freely reviews the trial court's application of constitutional principles in light of the facts found." *Clarke*, 165 Idaho at 396, 446 P.3d at 454. Additional standards of review will be reviewed in turn.

## III. ANALYSIS

The primary argument on appeal is whether a violation of Idaho Code section 19-608 constitutes an error of such constitutional dimension that it requires suppression of the evidence. Lancaster contends that the failure to comply with the arrest requirements in section 19-608 renders his seizure unreasonable under the Idaho Constitution. In addition to this argument, Lancaster argues in the alternative that the district court abused its discretion in admitting the Utah PSI in his sentencing. We will address each issue in turn.

A. **The failure to comply with Idaho Code section 19-608's notice requirements does not violate Article I, Section 17 of the Idaho Constitution.**

Lancaster relies on *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019), to argue that "the Framers of the Idaho Constitution would have considered the failure to comply with the requirements of I.C. § 19-608's territorial counterpart to also be an unreasonable seizure under Article I, Section 17 of the Idaho Constitution." He notes that in *Clarke*, this Court examined the Framers' intent and contends that "the Framers would have been aware of what Idaho's laws required in that regard and crafted the new constitution based on such understandings." In making this argument, Lancaster also asks this Court to revisit *State v. Sutterfield*, 168 Idaho 558, 484 P.3d 839 (2021), where this Court addressed another constitutional question concerning a violation of Idaho Code section 19-608. In response, the State contends that the *Sutterfield* Court already determined there is no constitutional violation where arresting officers fail to observe the notice requirements of section 19-608. We agree with the State that *Sutterfield* is determinative of the issue presented on appeal.

Article 1, Section 17 of the Idaho Constitution protects "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." This constitutional guarantee includes protection against arrests that qualify as unreasonable seizures. *Clarke*, 165 Idaho at 397–99, 446 P.3d at 455–57. Because evidence obtained in direct violation of the Idaho Constitution may not be used as evidence against the victim of illegal government action, such violations require the application of Idaho's independent exclusionary rule. *State v. Koivu*, 152 Idaho 511, 516, 518, 272 P.3d 483, 488, 490 (2012); *Bishop*, 146 Idaho at 810–11, 203 P.3d at 1209–10; *State v. Branigh*, 155 Idaho 404, 412, 313 P.3d 732, 740 (Ct. App. 2013). This Idaho rule has been in place for nearly a century as a remedy against unreasonable searches and seizures. *State v. Guzman*, 122 Idaho 981, 991, 842 P.2d 660, 670 (1992) (citing *Mapp v. Ohio*, 367 U.S. 643 (1961) and *State v. Arregui*, 44 Idaho 43, 254 P. 788 (1927)). However, the "suppression of evidence is a court-created remedy to ensure compliance with *constitutional* standards, and it is not appropriate to extend that remedy to violations that are merely statutory." *State v. Green*, 158 Idaho 884, 892, 354 P.3d 446, 454 (2015) (emphasis added), *abrogated on other grounds by Clarke*, 165 Idaho 393, 446 P.3d 451.

Under Idaho law, an arrest is defined as "taking a person into custody in a case and in the manner authorized by law." I.C. § 19-601. In most instances, the person making the arrest must comply with certain statutory requirements. This includes the provisions of Idaho Code section 19-608, which provides that "[t]he person making the arrest must inform the person to be arrested

6

of the intention to arrest him, of the cause of the arrest, and the authority to make it, . . . ." The statute only excuses these requirements "when the person to be arrested is actually engaged in the commission of, or an attempt to commit, an offense, or is pursued immediately after its commission, or after an escape." *Id.* Idaho Courts have held that "the accused be advised of the arrest, the reason for it, and the authority to make it" "at or near the time of an arrest." *State v. Person*, 140 Idaho 934, 940, 104 P.3d 976, 982 (Ct. App. 2004). Crucial to this case is the second prong requiring arresting officers to inform the arrestee "*of the cause of the arrest*," and whether failure to comply with this requirement violates the Idaho Constitution. I.C. § 19-608 (emphasis added).

Typically, one of the best resources for interpreting the Idaho Constitution is the compilation of the Proceedings and Debates of the Constitutional Convention of Idaho 1889 (I.W. Hart ed., 1912). *Clarke*, 165 Idaho at 397, 446 P.3d at 455. Article 1, Section 17, however, was adopted without debate. *Id.* Thus, "[i]n the absence of the words of the framers, rights guaranteed by the state constitution are 'examined in light of the practices at common law and the statutes of Idaho when our constitution was adopted and approved by the citizens of Idaho.' " *Id.* (quoting *State v. Creech*, 105 Idaho 362, 392, 670 P.2d 463, 493 (1983)). Yet, as we noted in *State v. Clarke*, while "preexisting statutes and the common law may be used to help inform our interpretation of the Idaho Constitution, . . . they are not the embodiment of, nor are they incorporated within, the Constitution. To hold otherwise would elevate statutes and the common law that predate the Constitution's adoption to constitutional status." *Id.* Therefore, "[w]hen construing the Idaho Constitution, 'the primary object is to determine the intent of the framers.' " *Id.* (citation omitted).

Recently, this Court addressed whether the failure to satisfy a related notice requirement in Idaho Code section 19-608 rose to the level of a constitutional violation. In *State v. Sutterfield*, this Court determined that an officer's failure to comply with a prong of section 19-608 did not violate the defendant's constitutional rights, and, consequently concluded that suppression of the evidence was not the appropriate remedy. 168 Idaho at 566, 484 P.3d at 847. In that case, the defendant, Sutterfield, stole a cell phone from a restaurant. *Id.* at 559–60, 484 P.3d at 840–41. A restaurant employee and his co-worker then confronted Sutterfield, recovered the cell phone, and contacted police. *Id.* at 560, 484 P.3d at 841. After the police arrived, the restaurant employee signed an affidavit and citizen's arrest form and the officer arrested Sutterfield for petit theft. *Id.* at 559, 484 P.3d at 840. During a search incident to that arrest, the officer found a small baggy of

methamphetamine. *Id.* at 561, 484 P.3d at 842. On appeal, this Court determined that the restaurant employee failed to "inform Sutterfield of his intention to arrest Sutterfield or the cause of the arrest." *Id.* at 564, 484 P.3d at 845. While the officer ultimately informed Sutterfield of his intention to make the arrest and of the cause of the arrest, the officer did not inform Sutterfield "of his authority to make the citizen's arrest." *Id.* at 564, 484 P.3d at 845. Thus, "the restaurant employee and his agent, Officer Barghoorn, did not satisfy the third prong of Idaho Code section 19-608." *Id.*

This Court concluded that the resulting statutory violation did not rise to the level of an unconstitutional action and, thus, did not warrant suppression as a remedy for the methamphetamine found on Sutterfield. We explained:

> We are mindful that the statute in question here—Idaho Code section 19-608—was enacted prior to the adoption of the Idaho Constitution. *See* Revised Statutes of Idaho Territory, Title III, Chapter V, § 7545 (1887). As we recently clarified, however, "preexisting statutes and the common law may be used to help inform our interpretation of the Idaho Constitution, but they are not the embodiment of, nor are they incorporated within, the Constitution." *Clarke*, 165 Idaho at 397, 446 P.3d at 455. Sutterfield has provided no argument or authority to support the proposition that a failure to satisfy the third prong of Idaho Code section 19-608 violates the provisions of Article I, Section 17 of the Idaho Constitution, and we decline to make such a ruling today. *See Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (stating that this Court will not consider an issue that is not supported by argument and authority). In fact, Sutterfield expressly concedes that a failure to comply with the notice requirements in Idaho Code section 19-608, without more, does not constitute grounds for the suppression of evidence.
>
> . . . Similar to the facts in *Green*, where the failure to fully comply with a statutory requirement did not rise to level of a constitutional violation, the failure to fully comply with the statutory notice requirements here does not rise to the level of a constitutional violation, either. To be clear, Officer Barghoorn was required to notify Sutterfield of his authority to make the citizen's arrest under Idaho Code section 19-608. His failure to do so, however, does not constitute a constitutional violation. Consequently, the suppression of evidence is not the appropriate remedy for the reasons articulated by this Court in *Green*.

*Id.* at 566, 484 P.3d at 847.

Applying *Sutterfield* to Lancaster's arguments renders them unavailing. Although he contends that a constitutional violation occurred, *Sutterfield*'s analysis suggests otherwise. While we previously addressed section 19-608's third prong—the requirement to notify an arrestee of the authority to make an arrest—our analysis was still a general determination that any violations of Idaho Code section 19-608 would not amount to constitutional violations. We collectively

8

summarized the three statutory prongs as "notice requirements" because arresting officers are generally required to provide each of those pieces of information to the person being arrested. *See id.* at 564, 484 P.3d at 845. Thus, the failure to notify an arrestee of the authority to make the arrest, as the officer in *Sutterfield* failed to do, is equivalent to the failure to notify an arrestee of the cause of his arrest, as Lancaster's arresting officers failed to do. In *Sutterfield*, we considered the issue in light of the statute's longstanding history, traced back to territorial days, and still concluded that the statutory violations, while transgressions of Idaho law, were not violations of constitutional guarantees.

In looking to *Sutterfield* and Idaho's history, we cannot agree with Lancaster's contention that a violation of Idaho Code section 19-608 rises to a constitutional dimension that would warrant suppression of the evidence. *Sutterfield* expressly stated that violations to Idaho Code section 19-608 were "the failure to fully comply with a statutory requirement" and "did not rise to level of a constitutional violation." 168 Idaho at 566, 484 P.3d at 847. This Court explained that the officer "was required to notify Sutterfield of his authority to make the citizen's arrest under Idaho Code section 19-608," but his failure to do so did not make suppression of the evidence the appropriate remedy. *Id. Sutterfield*'s determination corresponds with *People v. Nash*, where the Supreme Court of the Territory of Idaho concluded: "[t]he statute requires that an officer should inform a party of his office and his purpose when he is in the execution of process, but this becomes an idle formality when the officer is known. . . . The law does not require a useless parade of official pedigree to a party already knowing it." 1 Idaho 206, 214 (1868).

Lancaster is correct that Idaho law has consistently required a person making an arrest to give certain notice to the arrestee. Cr. Prac. 1864, § 134; Revised Statutes of Idaho Territory, Title III, Chapter V, § 7545 (1887); I.C. § 19-608. However, we were mindful of this history in our prior decision. *Sutterfield*, 168 Idaho at 566, 484 P.3d at 847. The statute precedes the Idaho Constitution and remained a statute following the Constitution's ratification. Yet, the Framers never expressly incorporated this language, or this requirement, into Article 1, section 17. Likewise, Idaho's territorial courts—and other common law jurisdictions—treated the notice requirements as procedural formalities to ensure a more peaceful arrest. *See, e.g., Nash*, 1 Idaho at 207; *Ker v. State of Cal.*, 374 U.S. 23, 56 n.10 (1963) (Brennan, J., concurring); *Klingler v. United States*, 409 F.2d 299, 306 (8th Cir. 1969). Again, this reflects our recognition in *Clarke* that "preexisting statutes and the common law may be used to help inform our interpretation of the Idaho Constitution, but

9

they are not the embodiment of, nor are they incorporated within, the Constitution." 165 Idaho at 397, 446 P.3d at 455. In sum, taken altogether, nothing in Idaho case law or common law history suggests the Framers' intent to incorporate such notice requirements into Article 1, Section 17 of the Idaho Constitution.

Lancaster also urges this Court to reconsider *Sutterfield* in light of *State v. Rauch*, 99 Idaho 586, 593 (1978), which held that noncompliance with Idaho's statutory knock-and-announce requirements also violates the state constitution. In short, he contends that the common law history of notice requirements is equivalent, or at least as necessary, to the constitutional protections in knock-and-announce requirements under Idaho Code section 19-611. However, knock-and-announce laws have deep roots in the common law and constitutional protections under the Fourth Amendment, primarily related to protecting the sanctity of the home. *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995) ("Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure."); *State v. Rauch*, 99 Idaho 586, 593, 586 P.2d 671, 678 (1978) ("The very sanctity of the home that underlies the passage of 'knock and announce' statutes, *Miller v. United States*, *supra*, requires that we exclude evidence seized as a result of the violation of those statutes."). Thus, we distinguish the statutory arrest protocols from those provisions which recognize the well-established constitutional protections afforded to those in their homes.

In conclusion, we agree with the district court that the officers here failed to comply with the notice requirements set forth under Idaho Code section 19-608. We also emphasize that such requirements should be adhered to where circumstances permit, as they did here. These requirements promote peaceful interaction with law enforcement. However, despite the strong public policy considerations behind such provisions, courts have consistently held that suppression is not an appropriate or required remedy for a statutory violation. Thus, the district court's analysis—which preceded our determination in *Sutterfield*—correctly concluded that although the police officers failed to "inform the person to be arrested . . . of the cause of the arrest," section 19-608 does not carry a constitutional dimension that warranted suppression of the evidence against Lancaster. Therefore, we affirm the district court's decision to deny the motion to suppress.

**B. The district court did not abuse its discretion in failing to strike an attachment to the PSI.**

Among the attachments to the PSI provided by the Idaho Department of Correction was a 2009 PSI from the State of Utah. The district court recognized that it contained conflicting and incomplete information regarding Lancaster's prior criminal record but refused to strike it. Instead, the court opted to rely on the more recent criminal record provided in a PSI from a 2015 federal case. Lancaster argues that the district court abused its discretion at sentencing by not striking the Utah PSI. The State contends that there was no error because the district court did not find the Utah PSI to be inaccurate or to contain unreliable information that should be stricken pursuant to Idaho Criminal Rules. Rather, there was conflicting evidence of Lancaster's criminal history, with the court concluding the federal PSI more reliable than the Utah PSI. We agree with the State that there was no abuse of discretion here.

"The decision whether to strike information from a PSI is reviewed for an abuse of discretion." *State v. Hanchey*, 169 Idaho 635, 638, 500 P.3d 1159, 1162 (Ct. App. 2021). This Court applies a four-part test when determining whether the lower court abused its discretion. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018). The Court reviews "whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Id.* (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)). On this issue, Lancaster argues that the district court failed to apply the correct legal standards.

"The rules of evidence do not apply to a PSI or in probation revocation proceedings." *Hanchey*, 169 Idaho at 639, 500 P.3d at 1163. Idaho Criminal Rule 32(e)(1) provides:

> The presentence report may include information of a hearsay nature where the presentence investigator believes that the information is reliable, and the court may consider that information. The judge may consider material contained in the presentence report that would have been inadmissible under the rules of evidence applicable at a trial. While not all information in a presentence report need be in the form of sworn testimony and be admissible in trial, conjecture and speculation should not be included in the presentence report.

Discretion lies with the trial courts "to consider information in a PSI believed to be reliable that would otherwise be inadmissible at trial so long as the defendant receives an opportunity to present favorable evidence and explain or rebut the adverse information." *Hanchey*, 169 Idaho at 640, 500 P.3d at 1164. However, two obligations limit this discretion: first, a trial court must "reject inaccurate, unfounded, or unreliable information contained in a PSI," and redline such information

11

from the document. *Id*. Second, the trial court "must then forward a copy of the redlined PSI to the Idaho Department of Correction." *Id.* "This procedure ensures a clear record for review and protects the defendant against future misuse of the unreliable information." *Id.* "A court, however, is not required to strike or disregard information in the PSI simply because the defendant disputes the information." *State v. Golden*, 167 Idaho 509, 511, 473 P.3d 377, 379 (Ct. App. 2020). Where "disputed portions of the PSI are not facially unreliable, the defendant must supply a sufficient basis for the trial court to make an independent determination on the reliability of the disputed information." *Hanchey*, 169 Idaho at 640, 500 P.3d at 1164.

Idaho courts require "unreliable information" to be stricken from a PSI to prevent future prejudice to defendants. *State v. Molen*, 148 Idaho 950, 961–62, 231 P.3d 1047, 1058–59 (Ct. App. 2010); *State v. Rodriguez*, 132 Idaho 261, 262 n.1, 971 P.2d 327, 328 n.1 (Ct. App. 1998). For "[t]he use of a PSI does not end with the defendant's sentencing"—it "follows a defendant indefinitely, and information inappropriately included therein may prejudice the defendant even if the initial sentencing court disregarded such information." *Rodriguez*, 132 Idaho at 262 n.1, 971 P.2d at 328 n.1. However, just as no statute gives the courts authority to demand the return of a PSI from Idaho's Department of Correction, *State v. Moore*, 150 Idaho 17, 19–20, 244 P.3d 161, 163–64 (2010), there is no authority permitting Idaho courts to alter another jurisdiction's PSI.

Regarding the 2009 Utah PSI at issue, the sentencing transcript records the following exchange between the district court and Lancaster's counsel:

> MR. STEWART [Defense Counsel]: Our basis was primarily that the 2015 federal PSI should be relied upon and not the 2009 Utah PSI.
>
> THE COURT: Insofar as it addresses the defendant's criminal history, or in some other way?
>
> MR. STEWART: I believe there were some other objections that were made by Mr. Lancaster in that 2009 Utah report. I tried to get more information as to that, for that. Mr. Lancaster has said that it went up on appeal, came back down to be corrected, but I could not find any of those records, but subsequent to that is the 2015, and yes, I guess primarily it is the criminal history.
>
> THE COURT: Well, I'm going to deny the request to strike this particular paragraph from the pre-sentence report or the [2009] Utah pre-sentence report as the defendant requests in item 35. There may be discrepancies in the criminal history as recited there compared to the federal pre-sentence report. I'll just indicate that I'm treating the federal pre-sentence report as authoritative when it comes to the defendant's criminal history, and to the extent the Utah pre-sentence report

12

conflicts with it, the discrepancies in the Utah report won't be considered; in other words, the federal report is the one I'll consider as authoritative.

Lancaster also specifically objected to the Utah PSI's record of a 22-month sentence that had been vacated by court order, and a paragraph describing an investigation against Lancaster for a series of burglaries on the Utah State University campus.

Upon reviewing Lancaster's objections, the district court did not find the Utah PSI to be inaccurate, unfounded, or unreliable. Rather, the court determined that in the face of conflicting evidence of Lancaster's criminal history, it would rely on the more recent federal PSI as the authoritative source. The district court also carefully examined every error alleged by Lancaster. It accepted several changes—redlining them for the Department of Correction—and rejected others. Importantly, every amendment made to the PSI by the district court benefitted Lancaster. The correct legal standards were followed precisely. While Lancaster had the opportunity to supply a basis for the Utah PSI's unreliability, the district court was within its discretion to conclude that the more recent federal PSI would be the foundation for Lancaster's criminal history. It determined that the Utah PSI was reliable save for the conflicting information in the criminal history. The district court made it clear that the conflicts presented by the older Utah PSI were not accepted.

We conclude there was no abuse of discretion. The district court made a thorough examination of any potential errors. It generated a highly detailed addendum to the PSI cataloging all of the corrections and revisions, and went to great lengths in fulfilling its duty to correct Lancaster's PSI. In so doing, the district court provided "a clear record for review and protect[ed] the defendant against future misuse of [any] unreliable information" in the PSI by the Idaho Department of Correction as they consider his status in the future. *Hanchey*, 169 Idaho at 640, 500 P.3d at 1164. Therefore, we affirm the district court and deny Lancaster's request to remand for a new sentencing hearing.

### IV. CONCLUSION

For the reasons set forth above, we affirm the orders of the district court.

Chief Justice BEVAN, Justices BRODY and ZAHN **CONCUR.**

STEGNER, J., concurring in part and dissenting in part.

I fully concur with the portion of the majority's opinion finding that the district court was within its discretion to allow a 2009 presentence investigation report (PSI) from the State of Utah to remain as an attachment to the PSI provided by the Idaho Department of Correction. However,

I respectfully dissent from the majority's conclusion that a violation of Idaho Code section 19-608 does not warrant suppression following that violation of law. I would hold, as set forth in my dissent in *State v. Sutterfield*, 168 Idaho 558, 567, 484 P.3d 839, 848 (2021) (Stegner, J., dissenting), that an admitted violation of an applicable statute rises to the level of a constitutional violation and, as a result, warrants suppression of the evidence gained after the State's admittedly illegal action.

Article I, section 17 of the Idaho constitution provides "[t]he right of the people to be secure in their persons, houses, papers and effects against *unreasonable* searches and seizures shall not be violated[.]" IDAHO CONST. art I, § 17 (italics added). While officers may search an individual who has been lawfully arrested, a prerequisite to that search being reasonable—and therefore constitutional—is that the arrest be undertaken lawfully. *See State v. Lee*, 162 Idaho 642, 649, 402 P.3d 1095, 1102 (2017) ("[L]aw enforcement officers may search an arrestee incident to a *lawful* custodial arrest.") (Italics added.) As I explained in *Sutterfield*, "[i]t should go without saying that a search incident to lawful arrest . . . requires a *lawful* arrest." 168 Idaho at 569, 484 P.3d at 850 (Stegner, J., dissenting) (italics in original). I would extend this reasoning to apply to unreasonable seizures as well as searches: An unlawful arrest is *per se* an unreasonable seizure. Therefore, it is unclear how an unlawful arrest comports with article I, section 17 of the Idaho constitution. Here, it is undisputed that the officers who arrested Lancaster willfully failed to comply with Idaho Code section 19-608 by refusing to inform him of the cause of his arrest. The officers' violation of section 19-608 rendered Lancaster's arrest unlawful. No one disputes this fact. To me, the remedy in such a situation is clear: "Absent a lawful arrest, the evidence obtained as a result of that unlawful arrest should be suppressed." *Id.* at 570, 484 P.3d at 851 (Stegner, J., dissenting).

Suppressing the unlawfully obtained evidence in this case comports with the policy behind the exclusionary rule. *State v. Guzman*, 122 Idaho 981, 994, 842 P.2d 660, 673 (1992) (explaining that the exclusionary rule of article I, section 17 of the Idaho constitution "1) provide[s] an effective remedy to persons who have been subjected to an unreasonable government search and/or seizure; 2) deter[s] the police from acting unlawfully in obtaining evidence; 3) encourage[s] thoroughness in the warrant issuing process; 4) avoid[s] having the judiciary commit an additional constitutional violation by considering evidence which has been obtained through illegal means; and 5) preserve[s] judicial integrity[]"). *See also State v. Donato*, 135 Idaho 469, 472, 20 P.3d 5, 8 (2001) (explaining Idaho's longstanding history of broadly applying the exclusionary rule to

14

unreasonable searches and seizures including to deter illegal police conduct). Permitting officers to act unlawfully with impunity voids this intent.

Police deterrence is not the only purpose of Idaho's exclusionary rule. *See Lee*, 162 Idaho at 647 n.2, 402 P.3d at 1100 n.2 (internal citations omitted). The rule also provides a remedy to those impacted by the illegal behavior. This Court has historically been expansive in its application of the exclusionary rule to those who have been subjected to an unreasonable search or seizure. *See, e.g.*, *Guzman*, 122 Idaho at 993, 842 P.2d at 672 ("[W]e disagree with the basic premise of the [good-faith exception to warrant requirement]—that the decision whether to apply the exclusionary rule should be made by determining whether the goal of police deterrence would be furthered in the case at bar—because it totally fails to take into account the other purposes of our independent state exclusionary rule."). *See also State v. Rauch*, 99 Idaho 586, 592–93, 586 P.2d 671, 677–78 (1978) (holding that, absent exigent circumstances, a violation of Idaho's knock-and-announce rule amounted to an unlawful search, prohibited by article I, section 17 of Idaho's constitution) ("Any other result would completely nullify the 'knock and announce' statutes[.]").

In *Rauch*, this Court emphasized:

We are duly mindful of the reliance that society must place for achieving law and order upon the enforcing agencies of the criminal law. But insistence on observance by law officers of traditional fair procedural requirements is, from the long point of view, best calculated to contribute to that end. However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of shortcut methods in law enforcement impairs its enduring effectiveness.

*Id.* at 593, 586 P.2d at 578 (quoting *Miller v. United States*, 357 U.S. 301, 313 (1958)). Therefore, I would hold that a violation of section 19-608 amounts to an unreasonable seizure in violation of the Idaho constitution.

Our decision in *Sprague* also supports this conclusion. There, Sprague filed several claims against the city and some of its police officers for what he argued, in relevant part, was the use of an unreasonable amount of force in his arrest. *Sprague v. City of Burley*, 109 Idaho 656, 658, 71 P.2d 566, 568 (1985). After officers stopped Sprague for a suspected DUI, they effectuated an arrest. *Id.* at 658–59, 71 P.2d at 568–69. Sprague argued that the arrest violated Idaho Code section 19-608. *Id.* at 667, 710 P.2d at 577. In analyzing the officers' defense of "qualified or good faith immunity" to Sprague's section 1983 claim, this Court rejected the district's court's opinion that "the officers did not need to inform Sprague of the fact of his arrest[,]" since he was "engaged in

15

the commission of an offense." *Id.* (internal quotation marks and citations omitted). According to the district court, Sprague was engaged in the commission of an offense because he was behind the wheel of the stopped car, and therefore "in the actual physical control of a motor vehicle" at the time of the arrest. *Id.* In reversing the district court, this Court rejected this narrow reading because Sprague was compliant and made no attempt to avoid or frustrate the objectives of the officers. *Id.* "At that point, for all practical purposes, the officers, not Sprague, were in control of Sprague's vehicle." *Id.* This Court elaborated,

> [t]he clear intent of the statute was to uphold an otherwise lawful arrest when, under the circumstances, it would not be practical for an officer to inform the arrestee of the facts of the arrest, the officer's authority to make the arrest, and the cause for the arrest[.] . . . Simply stated, there was no reason for them *not* to advise him of the fact of his arrest[.]

*Id.* (Italics in original.)

Though the *Sprague* decision was made in the context of a civil action, this Court was quite clear in its interpretation of the same statute at issue today. The situation was such that the officers easily could have complied with the requirement of the statute, but since they did not, they were not entitled to rely on the statute's exception. However, under today's holding, police officers may make an unlawful arrest without fear of either discipline or adverse consequences, and citizens subject to that unlawful arrest lose the protections they rightfully expected under the statute and constitution. Creating a distinction between an admitted violation of law and a conclusion that the law may be flouted without violating the constitution is a distinction I do not understand. In order to arrive at this result, this Court must conclude that it is reasonable under the circumstances for the police to act illegally. Otherwise, our constitution would prevent such a conclusion. Suppression is the only recourse available to Lancaster and others similarly situated. *See State v. Green*, 158 Idaho 884, 892–94, 354 P.3d 446, 454–56 (2015) (W. Jones, J., specially concurring), *abrogated on other grounds by State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2018). Today's holding leaves Lancaster without the remedy afforded by our constitution and without any other ability to vindicate his rights. *State v. Arregui*, 44 Idaho 43, 254 P. 788 (1927) ("[W]here else and by what procedure, other than in the immediate case being prosecuted, can the objection of a defendant be heard, or where can he apply for its suppression, or avail himself of his constitutional rights, or assert their violation?").

16

The majority specifically notes that the circumstances surrounding Lancaster's arrest were such that the officers could have followed section 19-608, yet they did not. This is not a case in which safety concerns required officers to act quickly to control a dangerous situation. Nor is this a case in which officers mistakenly thought Lancaster already knew the reason for his arrest: Lancaster asked, again and again, why he was being arrested and the officers *refused to tell him*. In doing so, they consciously disregarded existing Idaho law. The majority "emphasize[s] that [section 19-608] should be adhered to where circumstances permit." However, today's decision relieves police officers of any incentive to do so.

In sum, if an arrest "does not strictly comport with Idaho law, it is not a lawful arrest." *Sutterfield*, 168 Idaho at 570, 484 P.3d at 851 (Stegner, J., dissenting). I would hold that an unlawful seizure violates article I, section 17 of the Idaho constitution and therefore warrants suppression of evidence obtained pursuant to that seizure. Accordingly, I respectfully dissent.